FORTUNE v. COMMISSIONERS.

(Filed December 15, 1905).

*Construction of Statutes—Auditor of Buncombe County— Duties—Tax Lists—Officers—Register of Deeds—Ratification Clause.*

1. A statute should be construed with reference to its general scope and the intent of the Legislature in enacting it and, in order to ascertain what was the purpose, we must give effect to all of its clauses and provisions.

2. Where the language used is ambiguous, or admits of more than one meaning, it is to be taken in such a sense as will conform to the scope of the act and effectuate its object.

3. The use of inapt, inaccurate or improper terms or phrases will not invalidate the statute, provided the real meaning of the Legislature can be gathered from the context or from the general purpose and tenor of the enactment.

4. Clerical errors, misprisions, mere inadvertences or omissions which, if not corrected, would render the statute unmeaning or incapable of reasonable construction or would defeat or impair its intended operation, will not necessarily vitiate the act, for they will be corrected, if practicable.

5.  A misdescription or misnomer in a statute will not vitiate the enactment or render it inoperative, provided the means of identifying the person or thing intended, apart from the erroneous description, are clear, certain and convincing.

6.  Chapter 703, Laws 1905, which created the office of Auditor of Buncombe County and prescribed as one of his duties that of making out the tax lists and further required him to perform "all the duties required by section 74 of the Public Laws of 1905 to be performed by the register of deeds," etc., will be construed to refer to section 74 of the Machinery Act, which prescribes the duties of the register of deeds with reference to making out tax lists, this being the only chapter of the Laws of 1905 that contains as many as 74 sections and the only one referring to such duties.

7.  The fact that the Machinery Act (chap. 590) was ratified two days later than chapter 703 should not have the effect of defeating the will of the Legislature otherwise sufficiently declared, judicial notice being taken of the requirements of the Constitution, Art. II, sec. 14, that a law imposing taxes cannot pass unless the bill has been read on three several days.

8.  The auditor's duty prescribed by section 12 of chapter 703, Laws 1905, of examining all books and papers of the county officials, for the purpose of keeping a record of fees and commissions received by them cannot be performed under the terms of the act until after the next election, it being manifest that the change from the fee to the salary system was not to take effect until after the present terms expire.

9.  The provision of section 12 of chapter 703, Laws 1905, that the auditor shall prepare the tax lists and perform all other duties prescribed by section 74, of the Machinery Act, is effective from July 1, 1905, when the auditors' term of office commenced.

10.  When an act creates an office to commence at a certain time and directs its incumbent to perform certain duties which, though formerly belonging to another office, are required by law to be performed annually at a specified time, the officer must perform them, if at all, at the time specified.

11.  The office of register of deeds is constitutional, but the duties are statutory, and the Legislature may, within reasonable limits, change the duties and diminish the emoluments of the office, if the public welfare requires it to be done.

12. The expression used in the section 22, namely: "This act shall
be in full force and effect" must have been intended, by implica-
tion, to give the act immediate operation as to those matters
which pertained to the office of auditor, created by it, for the
regulation of which there seemed to be urgent need.

ACTION for a mandamus by A. B. Fortune against Board
of County Commissioners of Buncombe, pending in the Su-
perior Court of BUNCOMBE, and heard by *Judge Fred Moore,*
by consent, at Chambers in Asheville, on August 14, 1905.

The case was heard upon a case agreed which was as fol-
lows:

1. That A. B. Fortune is the register of deeds for the
county of Buncombe, duly qualified and elected, and as such
has been performing the duties incident to said office since the
first Monday of December, 1904, and that his term of office
will not expire until the first day of December, 1906.

2. That M. L. Reed, C. P. Weaver, R. B. Clayton, Frank
Wells and Marion Glenn were duly elected and qualified as
commissioners for the county of Buncombe on the first Mon-
day of December, 1904, and as such have been filling the
offices of county commissioners since said date and constitute
the board of county commissioners of the county, and their
term of office will not expire until the first Monday of Decem-
ber, 1906.

3. That the General Assembly of North Carolina, at its
session in 1905, passed an act entitled, "An act to amend an
act to provide for the assessment of property and the collec-
tion of taxes," which said act was ratified on March 6, 1905,
and went into force from and after its ratification, the same
being chapter 590, Laws 1905, and is made a part of this
case.

4. That the said General Assembly at its session of 1905
passed an act (chapter 703, Laws 1905,) entitled, "An act
to fix salaries for the officers of Buncombe county, and to

increase the road fund and to create the office of auditor of Buncombe County," which said act was ratified on March 4, 1905, and is made a part of this case.

5.   That on July 10, 1905, the plaintiff requested and demanded of the board of commissioners that the tax lists of the county be delivered to him for the purpose of performing the duties required of him by chapter 590, Laws 1905.

6.   That the board of commissioners declined and refused to permit the plaintiff to have the tax lists, and declined and refused to make an order for the payment of the said register of deeds for the work of computing the taxes and making out the tax lists, and declined and refused to permit the said register of deeds to perform any of the duties in relation to said tax lists required of him by said chapter 590.

7.   That the State Auditor furnished the plaintiff books and blanks for the purpose of preparing the tax lists, and the same were demanded of him by the board of commissioners and R. J. Stokely, and were delivered to said Stokely under protest—the plaintiff denying the right of Stokely or the board of commissioners to deprive him of the right to perform the duties mentioned and described in said chapter 590.

8.   That the plaintiff is, by virtue of section 2 of Article VII of the Constitution, *ex officio* clerk of the board of county commissioners.

9.   That said Stokely, on July 1, 1905, qualified as auditor for Buncombe County, and is now performing the duties required by section 12 of said chapter 703, Laws 1905, and is now, under authority of said act and by order of said commissioners, computing the taxes and preparing the tax lists of the county for the year 1905.

It is insisted by the plaintiff that he is entitled to perform the duties required of him by said chapter 590, and he asks the court for a writ of *mandamus* to compel the commissioners of the county to comply with the conditions of the provisions of chapter 590, Laws 1905, and to turn over to him the tax

lists for the county, which said tax lists they have undertaken
to place in the hands of said Stokely.

It is insisted by the defendants that said Stokely, by virtue
of chapter 703, Laws 1905, from and after July 1, 1905,
became the auditor for the county and entitled to perform all
the duties and functions of said office as prescribed in said
chapter 703, and as such auditor he was the proper person to
compute and make out the tax lists for the year 1905 for the
county of Buncombe—the said auditor's term beginning on
the first day of July, 1905.

Upon the foregoing facts, judgment was rendered that the
plaintiff is entitled to the tax lists and to perform the duties
in regard thereto, which are specified in the acts of 1905,
chapter 590, section 74, and to receive the compensation for
his services in that behalf.   It was then adjudged that a per-
emptory writ of *mandamus* issue, requiring the defendant to
deliver the lists to the plaintiff for the purposes aforesaid,
and to pay such compensation as they may deem proper for
his services in computing the taxes, completing the lists and
making copies as required by law.   The court further
adjudged that said Stokely is the duly elected auditor of
Buncombe County and that his term of office, as such, began
on the first day of July, 1905. The defendants were adjudged
to pay the costs.   From the judgment of the court they
appealed.

*Merrimon & Merrimon* for the plaintiff.
*Chas. A. Webb* for the defendant.

WALKER, J., after stating the facts:   The correctness of
the principles by which statutes should be construed, as stated
with much clearness in the brief of the plaintiff's counsel, may
be readily conceded, and yet we are of opinion, if the statute
in question is examined in the light of those principles, the
plaintiff has not shown himself entitled to the relief which he

seeks. Some of the cardinal rules for the interpretation of a statute are that it should be construed with reference to its general scope and the intent of the Legislature in enacting it and, in order to ascertain what was the purpose, we must give effect to all of its clauses and provisions. Where the language used is ambiguous, or admits of more than one meaning, it is to be taken in such a sense as will conform to the scope of the act and effectuate its object. The use of inapt, inaccurate or improper terms or phrases will not invalidate the statute, provided the real meaning of the Legislature can be gathered from the context or from the general purpose and tenor of the enactment. Clerical errors or misprisions which, if not corrected, would render the statute unmeaning or incapable of reasonable construction or would defeat or impair its intended operation, will not necessarily vitiate the act, for they will be corrected, if practicable. Nor will mere inadvertences or omissions have that effect, provided they can be supplied by reference to the context or to other statutes, and the true reading of the statute made obvious and its real meaning apparent. These principles are fully set forth and aptly illustrated, by reference to decided cases, in Black on Interpretation of Laws, sections 30 to 39. Guided by them, we should be able to ascertain and declare what was the intention of the Legislature with reference to the matter involved in this case, and whether it has been sufficiently expressed in the act under consideration. It seems that the leading purpose was to reduce expenses and to provide for the management of the affairs of the county in the future upon a more economical basis. At the same time, it was thought fair and just that a radical change from the fee system to the salary system should not take effect until the terms of those now in office should expire. In construing the act, we should give proper heed to this controlling idea and bring the different provisions of the statute into harmony with it, if this can reasonably be done. The office of auditor of the county was created, and at the same time filled

by the appointment of Stokely, and it is expressly provided
that his term shall begin on the first day of July, 1905. So
far, there can be no misunderstanding. Section 12 prescribed
the duties of the auditor and among others therein enumer-
ated is the duty of making out a copy of the tax list of each
township for the tax collector therein. He is further required
to perform "all the duties required by section. 74 of the Pub-
lic Laws of 1905, to be performed by the register of deeds,
and to prepare for publication the annual statements required
by law." One difficulty in construing the act, and an insu-
perable obstacle as the plaintiff's counsel contend, in the way
of enforcing the provision which we have quoted, is that there
is no reference therein to any particular chapter of the Acts
of 1905. It is argued that this is a patent ambiguity which
defeats the operation of that clause. "A misdescription or
misnomer in a statute will not vitiate the enactment or render
it inoperative, provided the means of identifying the person
or thing intended, apart from the erroneous description, are
clear, certain and convincing." Black, Int. of Laws, sec. 58.
Under this rule, we may call to our aid anything in the act
itself or even in the alleged erroneous description, which
sufficiently points to something else as furnishing certain evi-
dence of what was meant, though the reference to the extra-
neous matter may not in itself be full and accurate. The rule,
even when literally or strictly construed, does not require that
the erroneous description shall be altogether rejected in mak-
ing the search for the true meaning, but it may be used in con-
nection with anything outside of the statute to which it refers
and which itself, when examined, makes the meaning clear.
The erroneous description may in this way be helped out by
extraneous evidence. Black, *supra,* sec. 38. But ours is
not so much an erroneous, as an inaccurate description, and
the question is whether its words are adequate to express with
sufficient certainty the intention, of the Legislature. It has
been held that if a later act expressly refers to a designated

section of an earlier one, to which it can have no application, but there is another section of the prior act to which, and to which alone, in view of the subject matter, the later act can properly refer, it will be read according to the manifest purpose of the Legislature, and the misdescription will not prevent the reasonable construction that the Legislature intended to refer to the latter section. *School Directors v. School Directors,* 73 Ill., 249; *Plank Road Co. v. Reynolds,* 3 Wis., 258; Black, *supra,* sec. 38.

. When we turn to chapter 590 of the Acts of 1905, commonly known as the "Machinery Act," we find that section 74 prescribes the duties of the register of deeds with reference to computing the taxes and preparing the tax lists of the county, and this is the only chapter of those acts that contains as many as seventy-four sections, and it is the only one referring to such duties. It is true that chapter 590 was ratified two days later than chapter 703, but this should not have the effect of defeating the will of the Legislature otherwise sufficiently declared. Taking judicial notice of the course of legislation as affected by the requirements of the Constitution, Article II, section 14, that a law imposing taxes cannot pass unless a bill for the purpose has been read on three several days, we must assume that the bill which finally became chapter 590 was pending in one of the houses of the General Assembly at the time that chapter 703 became a law, and was nearing its completion, being in the last of the formative stages of legislation. It was not possible then, to indicate by number the chapter of the laws to which reference was made, as the arrangement of the acts into chapters had not then been effected, but it was possible to indicate the section. We have no doubt as to the intention, and conclude that the mere designation of the section was sufficient, under the circumstances, for us to identify with certainty the chapter and section to which the reference was made.

This brings us to the consideration of the other question,

whether it was intended that the act should have operation from July 1, 1905, as to the duties mentioned in that section. By section 12 of chapter 703 of the Acts of 1905, the auditor is required to perform various duties, the most, if not all of which, were the duties of other officers at that time. In the view we take of the case, it is not necessary that we should stop to inquire whether all of said duties appertained to other offices then existing, or whether some of them were newly created. It is sufficient for us to say that one of the duties, namely, the examination of all books and papers of the county officers, for the purpose of keeping a record of fees and commissions received by them, cannot be performed under the terms of the act until after the next election, as the liability of the said officers to account for fees and commissions received by them, cannot arise during their present terms of office—it being manifest that the change from the fee to the salary system was not intended to take effect until after the present terms expire. But there is no reason why the act should not be allowed to have full operation as to all duties not within that category. The language is explicit, that the auditor shall prepare the tax lists and perform all other duties prescribed by section 74 of the Laws of 1905, and this provision must have effect from July 1, 1905, when the auditor's term of office commenced, unless by a subsequent section its operation is postponed. Section 22 provides as follows: "This act shall be in full force and effect from and after the expiration of the term of office of the officers elected for said county at the election in November, 1904." The use of the adjective "full" implies that the act shall have some force and effect at once and its clear meaning is that it shall have such force and effect as to all official duties, except those which cannot be performed until after the expiration of the present terms of the county officers. This must be true, if we give to the word "full" its natural and ordinary meaning and then construe the act with due regard to the manifest intention of the Legisla-

ture.  When an act creates an office to commence at a certain time and direct its incumbent to perform certain duties which, though formerly belonging to another office, are required to be preformed annually at a specified time, the officer must perform them, if at all, at the time specified. There is nothing in this act to restrict the plain, direct and positive requirement of the statute that he shall prepare the tax lists, to a particular period of time, and there is no good reason why the operation of the act in this respect should be deferred.  The mere fact that the duty thus required of him had theretofore been annexed to another office and that the present incumbent of that office will be deprived of the compensation allowed for the service, is not sufficient to override the plain intent of the statute.  Again the act refers to the duties of the register of deeds as prescribed in section 74 of the Laws of 1905.  That section requires those duties to be performed in the years 1905 and 1906, and it must be the clear intendment that those duties shall be performed by the auditor in the same years.  This is in accord with the spirit and intent of chapter 703 to reduce expenses as speedily as is consistent with a just regard for existing rights.  The abolition of the fee system was postponed until the expiration of the present official terms, for reasons which appeared to the Legislature to be sound and just, but they do not apply to the mere transfer of some of the duties of one officer to another then created by the statute.  Nor is there any constitutional objection to such transfer.  The office is a constitutional one, it is true, but the duties are statutory.  The Legislature may within reasonable limits change the duties and diminish the emoluments of the office if the public welfare requires it to be done, and to this the incumbent must submit.  *Bunting v. Gales,* 77 N. C., 283; *Mial v. Ellington,* 134 N. C., 131; *Hoke v. Henderson,* 15 N. C., at p. 20.

We have not adverted to the fact that the Legislature has not only created the office of auditor, but has filled it by direct

appointment, instead of waiting for its incumbent to be chosen at the next election, which shows that there was considered to be a pressing necessity for immediate change from the old system to the new, in respect to the duties assigned to the auditor by the act. His salary is fixed at $1,200, and unless our construction be the correct one, he will have very little to give, in the way of public service, in return for what he will receive. His salary would seem to be out of all proportion to the work which would be left for him to do. This result is not consistent with the main purpose and the evident policy of the enactment.

The expression used in section 22, namely, "this act shall be in full force and effect," cannot be found in any other statute and they must have been intended, by implication, to give the act immediate operation as to those matters which pertained to the office of auditor, created by it, for the regulation of which there seemed to be urgent need. If this is not the meaning, we are unable to understand what it is. The provision in regard to the duty of preparing the tax lists, if put into immediate effect, will not conflict with the other provisions concerning the substitution of salaries for fees. This is not true as to some of the other duties imposed upon the auditor, and, as to the latter, the act will take effect only after the existing terms of the officers expire.

The statute must have some effect, for it was clearly so intended, and we can give it none unless we hold that the auditor is to perform the duties of the register of deeds in respect to the tax lists, this year and the next, and, of course, thereafter unless the Legislature should otherwise provide.

There was error in the ruling of the court upon the facts agreed. The judgment will be reversed and judgment entered for the defendant.

Reversed.