### H. W. WHARTON v. CITY OF GREENSBORO.

(Filed 14 December, 1907).

1. Statutes—Interpretation—Cities—Credit—Bond Issue—Special Purpose.

When two statutes are consistent they should be construed together. An amendment to a city charter, made by the Legislature in 1907, conferring upon the city the power to issue bonds in a certain prescribed manner, providing, among other things, "that nothing herein contained shall be so construed as to prevent or forbid said board of aldermen to incur reasonable liabilities by way of contract, which may be paid off and discharged out of the current revenues to accrue during the term of office of said board, or to borrow reasonable sums of money when necessary to anticipate the collection of taxes or revenues to accrue during said term of office," is not repugnant to and does not repeal, by implication, so far as an indebtedness contracted for a special purpose is concerned, the provisions of Revisal, sec. 2977, making it unlawful for any city, etc., "to contract any debt, pledge its faith or loan its credit," etc., "for any special purpose, to an extent exceeding in the aggregate ten per cent. of the real property," etc.

2. Same—Interpretation—Constitutional Law—Cities—Credit—Special Purpose.

Revisal, sec. 2977, limiting the power of any city, etc., in contracting debt, is not in conflict with Article VII, section 7, of the State Constitution, and is valid. The interpretation of the words "special purpose," as contained in the statute, embraces all forms of debt not within the legitimate necessary expenses of the municipality.

3. Same — Interpretation — Cities — Debt — Necessary Expenses — Bonds.

A bond issue to pay the floating debt of a city, incurred for the legitimate necessary expenses of the city government, is valid and not within the meaning of the prohibitive words of Revisal, sec. 2977, as to an issuance thereof for a special purpose.

CIVIL ACTION, heard before *Long, J.*, and a jury, 8 November, 1907, in GUILFORD County, and brought by plaintiff in behalf of himself and of all other taxpayers against the city of Greensboro to enjoin the city, its officers and agents from issuing and selling certain bonds, amounting in the

aggregate to $155,000, and from levying any tax to pay any of such indebtedness.

His Honor heard the application for an injunction, declined to grant same, and gave judgment against plaintiff, who thereupon appealed to the Supreme Court.

*A. M. Scales* for plaintiff.
*Thomas J. Shaw* for defendant.

BROWN, J. The allegations of fact set out in the complaint are all admitted by the answer, and from these it appears that the bonded indebtedness of the city of Greensboro, exclusive of the proposed issue, is $700,000, in addition to a floating indebtedness of $125,000; that the present assessed tax valuation of all real and personal property within said city is $7,736,490; that at the time of the election authorizing the issue of bonds the total tax valuation was $6,500,000.

It appears that the Board of Aldermen, on 28 December, 1906, passed an ordinance, in the manner required by the city charter, authorizing the issue of $30,000 of bonds for the special purpose of "equipping, altering and furnishing a school building or buildings for the city." This bond issue was duly approved by a majority of the qualified voters at an election held 12 March, 1907. On 13 July, 1907, the board duly adopted an ordinance authorizing the issue of $125,000 in bonds, which issue was duly approved at an election held according to law on 8 October, 1907. It is admitted that the purpose of issuing the $125,000 in bonds is to pay off the floating debt of the city. This floating debt, it is admitted, is evidenced by notes issued by the board, without an election, for the building of streets, improvement of waterworks already owned by the city, and other actually necessary expenses of running the municipal government.

It is admitted that the proposed issue of bonds exceeds the

limit fixed by law upon the cities and towns of the State, as embodied in the Revisal of 1905, which reads as follows:

"Section 2977. *Limited to ten per cent. of assessed value.* It shall be unlawful for any city or town to contract any debt, pledge its faith or loan its credit for the construction of railroads, the support or maintenance of internal improvements, or for any special purpose whatsoever, to an extent exceeding in the aggregate ten per cent. of the assessed valuation of the real and personal property situated in such city or town."

The defendant contends that its amended charter enacted by the General Assembly of 1907 repeals, by implication, the above restriction upon its power to contract debts, and the following clauses in said charter are cited as sustaining defendant's contention:

"Section 100. That among the powers hereby conferred on the Board of Aldermen, they may issue bonds only after they have passed an ordinance by a three-fourths vote of the entire board at two separate regular meetings, submitting the question of issuing the bonds to a vote of the people, and a majority of the qualified registered voters have voted in favor thereof. Thirty days' notice shall be given of such election in some newspaper published in Greensboro, at which election those who favor creating the debt shall vote 'Approved,' and those who oppose it shall vote 'Not Approved.'"

The above section was amended at the same session by adding the following:

"The said board shall not have power to create any indebtedness unless authorized to do so by an election called and held in the manner hereinbefore specified: *Provided,* that nothing herein contained shall be so construed as to prevent or forbid said board to incur reasonable liabilities by way of contract which may be paid off and discharged out of the current revenues to accrue during the term of office of said board, or to borrow reasonable sums of money when necessary to

anticipate the collection of taxes or the revenues to accrue during the said term of office, as aforesaid."

1. We will consider first the $30,000 bond issue to be devoted to a special purpose, admittedly not a necessary municipal expense.

We are unable to agree with the learned counsel for the defendant that the sections of the defendant's charter quoted herein and enacted two years after the Revisal repeal the latter, so far as the defendant is concerned. It is not contended that it does so in express terms, but only by implication. We fail to find any repugnancy between the general law and the defendant's charter. The two statutes are entirely consistent and may easily stand together. *Simonton v. Lanier,* 71 N. C., 498; *State v. Railway,* 141 N. C., 853.

Section 2977 of the Revisal is a general law, of great wisdom, intended to prevent municipal corporations from plunging headlong into debt. The sections quoted from the charter do not confer an unlimited power to contract debts upon the defendant, but prescribe the method to be pursued. The limitation imposed by the general law is still binding upon the defendant, so far as indebtedness contracted for a special purpose is concerned. A special purpose, within the meaning of the act, embraces all forms of debt not within the legitimate necessary expenses of the municipality. There can be no doubt that the General Assembly may thus restrict the powers of municipal corporations to contract debts. They are but instrumentalities of the State for the administration of local government, and their powers may be enlarged, abridged or withdrawn entirely at the pleasure of the Legislature. *Lilly v. Taylor,* 88 N. C., 490; *Jones v. Commissioners,* 137 N. C., 592. In the well-considered opinion of *Mr. Justice Hoke* in the latter case the authorities are collated and the powers and duties of municipal corporations fully discussed.

Article VII, section 7, of the Constitution does not conflict with the limitation imposed by section 2977 of the Revisal.

The former is itself in the nature of a limitation upon the powers of municipal corporations to contract debts, except for necessary expenses, and does not confer upon them the right to contract debts *ad libitum,* independent of the supervisory power and control of the General Assembly.·  *Brodnax v. Groom,* 64 N. C., 249; *Jones v. Commissioners, supra.*

2. As to the issue of bonds to pay the floating debt of the city, a different question is presented.   It is admitted that the floating debt was contracted for the legitimate necessary expenses of the city government.   Issuing bonds to pay it is but exchanging one form of indebtedness for another, and is but an extension of the indebtedness at possibly a lower rate of interest.   These bonds are not issued for a special purpose, within the meaning of section 2977 of the Revisal, but to pay off and discharge a present valid indebtedness of the city, contracted to pay its necessary expenses, as the board was empowered to do by section 7, Article VII of the Constitution. *Brodnax v. Groom, supra; Fawcett v. Mount Airy,* 134 N. C., 125; *Wilson v. Commissioners,* 74 N. C., 748; *Tucker v. Commissioners,* 75 N. C., 274.   We are of opinion that this issue is valid.

The cause is remanded, that an injunction may be granted enjoining the issue of the $30,000 in bonds mentioned in the first section of this opinion.   Let the costs be equally divided between the appellant and appellee.

Error.