## G. McLEOD v. THE BOARD OF COMMISSIONERS OF THE TOWN OF CARTHAGE.

(Filed 25 May, 1908.)

**1. Taxation—School Districts Within Municipality—Town Commissioners—Constitutional Law.**

An act creating a school district within the limits of a town and authorizing a vote upon the question of issuing bonds within the district prescribed, by taxation on property and polls therein, is not void by reason of a provision that the board of commissioners of the town were designated to call the election and have the usual powers incident to the issue and levy.

**2. Statutes, Interpretation of—Ambiguity—Construed as a Whole.**

Statutes should be interpreted in accordance with that meaning which is clearly expressed, and, should there be doubt or ambiguity, the true legislative intent should be ascertained from the language used.

McLeod v. Commissioners.

3. Same—Taxation—School Districts Within Municipality—Vote of the People—Constitutional Law.

An act creating by clearly expressed language a prescribed school district within the corporate limits of a town, and providing for an indebtedness and levy by taxation upon the property and polls within that district for school purposes, and in another part there are expressions to the effect that the tax so levied "shall be" for the support of schools in said town, and the purchase of land and erection of school buildings thereon "with money raised by issuing bonds of the town," as provided for, when construed as a whole, does not impose a debt upon the poll and property in the town outside of the prescribed school district, and is not, therefore, unconstitutional as being without the consent of the people living in the town beyond the school limits.

4. Legislative Powers—School District Within Municipality—Uniformity—Constitutional Law.

The Legislature may establish a separate school district within another municipality, under the provisions of Article VII, section 7, when the principle of uniformity is established, as required by section 9 of this article. (*Smith v. School Trustees*, 141 N. C., cited and approved.)

5. Same—Race Discrimination.

An act creating a school district within certain prescribed limits in the corporate limits of a town will not be held as an unconstitutional discrimination between the two races, when it appears that there are no colored children within the school district and there is no suggestion that those in the town outside the district have not been provided with ample means and facilities for their education. (*Lowry v. School Trustees*, 140 N. C., 33, cited and approved.)

ACTION heard by *Webb, J.,* at April Term, 1908, of MOORE.

This action was brought to enjoin the defendants, commissioners of the town of Carthage, from issuing and selling coupon bonds and from levying any tax to pay the same or the interest thereon, and to restrain their codefendant, the tax collector of Carthage, from collecting taxes levied by the said commissioners to pay the interest on the bonds and create a sinking fund to pay the principal at maturity. The defendants are proceeding under and by virtue of the provisions of the Private Laws of 1907, ch. 482, authorizing the creation

McLeod v. Commissioners.

of a school district in the town of Carthage. The parties agreed that the Judge should find the facts and enter judgment according to his opinion upon the law. The Judge's findings of fact and conclusions of law were as follows:

1. The plaintiff is a citizen and a taxpayer of the town of Carthage and resides within the boundaries of the school district hereinafter described.

2. The General Assembly of North Carolina, at its session of 1907, passed an act to amend the charter of the town of Carthage, which was ratified 11 March, 1907, it being chapter 482 of the Private Laws of North Carolina passed at said session, to which reference is made.

3. The corporate limits of the town of Carthage were run and marked by order of the Board of Commissioners of the Town of Carthage, after the passage of said act of the General Assembly and prior to the times hereinafter mentioned in the further findings of fact herein.

4. The school territory or district described in section 54 of said act of the General Assembly lies within the boundaries of the town of Carthage, as prescribed in section 2 of said act, but does not include all the territory embraced within the corporate limits of said town, and the boundaries of said school territory or district are not coterminous with the corporate limits of said town.

5. Persons of school age reside within the corporate limits of said town, outside the boundary of the school district described in said section 54 of said act, and some of the residents of said town own property within the corporate limits of said town and outside the boundaries of said school district.

6. Persons of school age reside within the boundaries of said school district, as hereinbefore set forth.

7. Persons of the colored race, as well as persons of the white race, reside within the corporate limits of the town of Carthage and outside the boundaries of said school territory,

who are the owners of property, and some of whom are electors. That persons of school age of the colored race, as well as persons of school age of the white race, also reside within the corporate limits of the town of Carthage and outside the boundaries of said .school district; that persons of the white race only reside within the boundaries of said school territory described in section 54 of the act of the General Assembly.

8. The Board of Commissioners of the Town of Carthage, at their regular meeting held in June, 1907, levied a tax for the year 1907 on all taxable property in the territory de-.scribed in section '54 of said act of the General Assembly of eight cents on every one hundred dollars valuation of property and twenty-four cents on each taxable poll, for the purpose of paying the interest on the school bonds of $10,000 to be issued under the provisions of said act and pursuant to the election held thereunder, as prescribed in said act and as hereinafter set forth, and also a tax on all taxable property in said territory described in section 54 of said act of .thirty-two cents on every one hundred dollars valuation of taxable property in said territory and ninety-six cents on each person subject to poll tax and residing therein, for the purpose of establishing and maintaining a public graded school in said territory, under provisions of the said act of the General Assembly and pursuant to the election held thereunder, as hereinafter set forth.

9. No tax was levied by the said board of commissioners or the authorities of the town of Carthage for school purposes or for the payment of principal and interest on said school bonds upon the taxable property within the corporate limits of the town of Carthage situated outside the territory described in section 54 of said act, nor was any poll tax levied upon persons residing outside the limits of said school territory, and it is not the purpose of said board of commissioners to levy such tax at any time upon property situated within the corporate limits and outside of said school territory.

10. At a meeting of the Board of Commissioners of the Town of Carthage, held pursuant to law, on 22 April, 1907, it was ordered by said board that an election be held, under and by virtue of said act, in the territory described in section 54 of said act, upon the question whether a tax should be annually levied and collected therein for the support and maintenance of schools in said territory and the purchase of lands for the erection of schools, buildings and fixtures thereon, and paying interest upon the coupon bonds for schools referred to in said act, and providing for a sinking fund for the payment of the same, and whether coupon bonds in the sum of $10,000 should be issued for the erection of said school buildings in said territory and equipping the same with school fixtures, as provided in said act, and said election was ordered by said board to be held in said territory on the first day of June, 1907. By the terms of said order the qualified voters in said territory who were in favor of the levy and collection of said tax and the issue of said bonds as provided in said act were to vote a written or printed ticket, without device, on which should be the words "For Schools and Bonds," and the qualified voters who were opposed to the levy and collection of such annual tax and the issue of said bonds as provided in said act should vote a written or printed ballot, "Against Schools and Bonds"; and, pursuant to said order, registrars and judges or inspectors of election were duly appointed to hold said election under the rules and regulations and laws governing the election of officers of the town of Carthage, and said election was duly advertised and ordered to be held in accordance with the provisions of said act of the General Assembly.

11. The said election was duly held, in accordance with the order of said board of commissioners and under the provisions of said act, on the day aforesaid, and at said election a majority of the qualified voters residing within said school district cast their ballots "For Schools and Bonds." Said

148—6

election was regularly and legally held, as provided by said act of the General Assembly and by order of the Board of Commissioners of the Town of Carthage, pursuant to authority conferred by said act of the General Assembly; and upon report of said registrars and judges or inspectors of election of the result of said election to the Board of Commissioners of the Town of Carthage, as provided by law, the said board found as a fact that a·majority of the qualified voters residing within said school district cast their ballots at said election "For Schools and Bonds."

12. The Board of Commissioners of the Town of Carthage, pursuant to the provisions of said act and the election held thereunder pursuant to said act and the order of the board aforesaid, have advertised the sale of coupon bonds in the sum of $10,000, to be issued in accordance with the provisions of said act and pursuant to said election, for the purpose of purchasing a site and erecting school buildings and equipping the same for a graded school in the territory described in section 54 of said act, and it is the purpose of said board of commissioners to make sale of said bonds and apply the proceeds arising from said sale to the purposes specified in said act of the General Assembly.

13. The Board of Commissioners of the Town of Carthage, at a meeting held in 1907, duly appointed the defendant W. W. Baldwin tax collector of the town of Carthage, and, after he had executed a bond as provided by statute for the faithful collection of said taxes and accounting for the same, placed in his hands for collection as an execution the tax list, upon which is computed the taxes levied by the said Board of Commissioners of the Town of Carthage upon polls and property situated within said school district, for school purposes, as hereinbefore set forth, and said tax collector is now attempting to collect the taxes so levied for said purposes, to the end that said special tax be applied to pay the interest on said bonds and to create a sinking fund to pay the principal of

said bonds at maturity, and for the maintenance of said school, as set forth in the order of the board levying said tax, as provided in said act of the General Assembly and pursuant to said election held as aforesaid.

14. It is the purpose of the Board of Commissioners of the Town of Carthage, at its meeting in June, 1908, to levy another and additional tax upon the property and polls within said school district for the school purposes specified in said act of the General Assembly. That said act of the General Assembly was enacted by the General Assembly at its session of 1907, in accordance with the provisions of Article II of the Constitution of North Carolina, the particular facts with reference to the passage of the same being as are set forth in section 19 of the answer of the defendant filed herein.

15. It is not the purpose of the Board of Commissioners of the Town of Carthage to levy any tax upon the people of the colored race or the people of the white race residing within the corporate limits of said town of Carthage, outside the boundaries of said district, who own no property within the school district aforesaid, but it is the purpose of said board to levy said tax authorized by said act only upon the property within the school territory aforesaid and residents therein, in accordance with the provisions of said act and for the benefit of the people only who reside within said school territory, as set forth in said act.

Upon the foregoing facts the court adjudged and decreed:

1. That the taxes levied by the Board of Commissioners of the Town of Carthage at its meeting in June, 1907, for school purposes are valid and authorized by said act of the General Assembly and the election held pursuant thereto.

2. That the coupon bonds in the sum of $10,000 for school purposes, advertised for sale by the Board of Commissioners of the Town of Carthage, constitute a valid indebtedness against the school territory described in said act of the General Assembly of North Carolina, and are legal and valid,

and the Board of Commissioners of the Town of Carthage is duly authorized and empowered to issue said bonds as a valid indebtedness against said territory and make sale of the same, and to levy the tax authorized by said act of the General Assembly upon taxable property and polls situated in said school district for the purpose of paying the principal and interest of said bonds, as provided in said act of the General Assembly, and to levy the taxes for the maintenance of schools within said territory, as provided by said act.

3. That the defendants go without day and recover their cost of the plaintiff, to be taxed by the Clerk of this court.

The plaintiff excepted to the judgment and appealed to this Court.

*W. J. Adams* for plaintiff.
*M. L. Spence* for defendants.

WALKER, J.   The decision of this case turns upon what is the true meaning of chapter 482 of the Private Acts of 1907. The objection of the plaintiff to the issuing and selling of the bonds and to the levy and collection of the tax to pay the interest as it accrues, and the principal at maturity, is based upon the ground that the provisions of the act in regard to that matter are repugnant, and that, by a proper construction of the statute, rejecting certain sections thereof because they conflict with other and subsequent sections, where the intent is expressly or at least more clearly indicated, we should hold that the Legislature has authorized the issuing of bonds by the town of Carthage and the levy of a tax for the payment of the same upon residents of that town outside the limits of the school district created by the act, for the erection of a school and its maintenance within that district for the benefit of persons residing therein and to the exclusion of those residing in the town but not in said district; and this, they contend, is contrary to the provisions of the Constitution, and the act is therefore void.   We are unable to admit the prem-

ises laid down by the plaintiff, even if the deduction there-
from be ever so correct.   It is clear to us that the Legislature
intended to establish a school district within the corporate
limits of the town of Carthage and from a part of the terri-
tory of the said town for the purposes specified in the act,
and that bonds should be issued, not by the town, but by the
corporate authorities of the town, the board of commissioners,
for and in behalf of the school district so created by the stat-
ute.   It was perhaps considered more convenient and less ex-
pensive to have the board of commissioners, the treasurer and
the tax collector of the town perform the several duties and
functions assigned to them than to provide for the appoint-
ment or election of officers within the school district for that
purpose.   We can see no objection to this method of adminis-
tering the affairs of the district and to the procedure adopted
in order to execute the purpose the Legislature had in view.
The plaintiff argues that, as in section 50 it is provided that
an election shall be held to determine whether taxes shall be
levied "for the support of the schools in said town provided
for in this act, and the purchase of land and the erection of
school buildings thereon," and, further, that the money to pay
for the land and school buildings "shall only be raised by
issuing the bonds of the town, as hereinafter provided for,"
the Legislature has attempted to impose a debt upon the peo-
ple of the town residing outside the school district without
their consent, for the support of the school to be established
in the district, notwithstanding subsequent provisions of the
act, which, we think, negative any such intention.   The stat-
ute must be construed as a whole, and not by the wording of
any particular section or part of it.   The law requires that,
in the interpretation of a statute, we should give it that mean-
ing which is clearly expressed, and if there is doubt or am-
biguity we should construe it so as to ascertain from its lan-
guage what was the true intention of the Legislature.   *Her-
ring v. Dixon,* 122 N. C., 425; *Wilson v. Markley,* 133

N. C., 616; *Fortune v. Commissioners,* 140 N. C., 322; *Board of Education v. Commissioners,* 137 N. C., 312; *Lowry v. School Trustees,* 140 N. C., 40; *Spencer v. Railroad,* 137 N. C., 119. If we follow the rules of interpretation and construction as stated in the cases we have cited, we find no serious difficulty in ascertaining what is meant by this act. When the word "town" is used in section 50 it is with reference to the election which is required to be held "as provided in this act," and the election is required to be held, not in the town, but within the district. The same may be said of the expression in section 50, that the "bonds of the said town" shall be issued and sold to pay for the school buildings and site, as they are required to be issued "as hereinafter provided for." When we refer to the subsequent sections of the act, especially to section 61, we find that the commissioners of the town are directed to issue the bonds for the school district, and it also appears by the clearest intendment that the taxes are to be levied only on property and polls within the district. It was plainly the intention of the Legislature, when using the word "town," to designate only that part of it which lies inside the territory of the school district, and we think this intent appears unmistakably if we read and consider the act in its entirety. We hold that the commissioners and other officers of the town of Carthage can proceed to execute the provisions of the act in accordance with our construction thereof, and that the bonds should be issued for the school district and the taxes levied and collected in the manner prescribed therein.

The other questions raised by the plaintiff, as to the power of the Legislature to establish a separate school district within another municipality and as to the lack of uniformity of the tax, have been recently decided in *Smith v. School Trustees,* 141 N. C., 143, and require no further discussion here. The question of discrimination as between the two races is settled against the plaintiff's contention by the decision of this Court

in *Lowery v. School Trustees,* 140 N. C., 33, if such a question is presented in the case. We think it is not, as there are no colored children in the school district, and there is no suggestion that those in the town, outside the district, have not been provided with ample means and facilities for their education.

There was no error in the ruling of the Judge upon the facts as found by him, and we therefore affirm the judgment.

Affirmed.