## TOWN OF MURPHY v. C. A. WEBB & CO.

(Filed 25 October, 1911.)

1. **Cities and Towns—Bond Issues—Taxation—Sewerage and Water System—Necessaries.**

   Bonds issued by a town for the purpose of extending its water and sewerage system and for making certain necessary street improvements are necessary expenses.

2. Cities and Towns—Bond Issues—Taxation—Necessary Expenses —Legislative Restrictions—Constitutional Law.

The Legislature may restrict or limit the power of incorporated towns or cities to tax or contract debts for purposes which fall within the class of necessary expenses, for they are but the State's instrumentalities for. the administration of local government; and when this restriction is thus placed upon them, or it is required of them to submit the question of a bond issue to popular vote, and an issue of bonds is made without compliance therewith, the issue is invalid. Constitution, Art. VII, sec. 4.

3. Interpretation of Statutes—Repealing Acts—Subject-matter— Identification.

A legislative act upon a subject-matter which by express terms repeals a section of a specified chapter of the laws of a certain year, referring to the Public Laws, will be construed as repealing the corresponding section of that numbered chapter of the Private Laws of that year, when the subject-matter is the same and the Public Laws referred to have no bearing upon or relevancy to the subject to which the repealing statute refers.

4. Same—Bond Issue—Taxation—Necessaries—Restrictions Repealed.

Chapter 239 of the Private Laws of 1889 is the charter of the town of Murphy, and section 17 thereof requires that, to levy a tax or issue bonds for certain necessary expenses, the question should first be submitted to a popular vote. Chapter 387, sec. 2, Private Laws of 1911, refers to the same subject-matter and repeals section 17 of the Public Laws of 1889, which. has no bearing upon or relevancy to the same subject-matter: *Held*, the reference to the Public Laws was evidently a clerical error, and the Laws of 1911 are construed to repeal section 17 of the Private Laws of 1889, ch. 239, sec. 17, so as to take away the legislative restrictions therein imposed.

5. Municipal Bonds—Laws 1911, Chapter 86.

The Laws of 1911, chapter 86, has no application to cities and towns having special provisions authorizing issuing of bonds for construction of sewerage and waterworks, as is the case with the town of Murphy.

APPEAL from CHEROKEE, heard by *Webb, J.,* upon case agreed, at chambers in Murphy, 16 September, 1911.

This case was brought to test the validity of certain bonds issued by the plaintiff for the purpose of extending or enlarg-

ing its water and sewerage system and of making street improvements, and was heard in the court below upon the following case agreed:

1. The plaintiff is a municipal corporation, chartered by the name aforesaid and organized under and by virtue of chapter 239 of the Private Laws of 1889, and the acts amendatory thereof, and especially chapter 387 of the Private Laws of North Carolina of 1911.

2. On 31 August, A. D. 1911, the plaintiff contracted with the defendants to sell to them certain bonds of the town of Murphy, of the par value of $25,000, which are to draw interest at the rate of 6 per cent, and to run for a period of thirty years, the proceeds of which are to be used for extending the water and sewerage system of the town of Murphy and for making certain necessary street improvements.

3. The plaintiff claims that it has the right to issue the bonds under and by virtue of its charter, to wit, chapter 239 of the Private Laws of 1889, as amended by chapter 387 of the Private Laws of 1911, and of a resolution which was adopted by the board of commissioners of said town on 6 September, 1911, and that no vote of the people is required.

4. The defendants have refused to carry out said contract, by receiving and paying for the said bonds, for the reason that section 17 of said chapter 239 of the Private Laws of 1889 does not permit the said town to borrow money or issue bonds unless authorized by the qualified voters of said town.

5. The plaintiff claims that section 2 of said chapter 387 of the Private Laws of North Carolina of 1911 repeals said section 17 and permits and authorizes the town to issue the bonds without submitting the question of their issue to a vote of the qualified voters of the town. The defendants contend that said chapter 387, Private Laws 1911, does not repeal said section 17.

6. It is also agreed that chapter 239 of the Private Laws of 1889 is the charter of the town of Murphy, and that chapter 239 of the Public Laws of 1889 is "An act to incorporate the Fayetteville and Albemarle Railroad Company."

7. It is agreed between the plaintiff and the defendants that the Superior and the Supreme Courts be requested to pass upon

the question herein raised, and that judgment be entered according to the final decision which may be given, and, if the court is of the opinion that the bonds are valid, that the defendants be required to receive and pay for the bonds; but if the court is of the opinion that the bonds are invalid, then the defendants shall not be required to pay for said bonds.

The court, after hearing argument and upon consideration of the facts, rendered judgment for the plaintiff, and the defendants appealed.

*E. B. Norvell for plaintiff.*
*Charles A. Webb for defendant.*

WALKER, J., after stating the case: It is thoroughly well settled by our own decisions that, for the necessary expenses of a county or town, bonds may be issued without a vote of the people authorizing the same, and the purposes for which the bonds in question were issued fall within the class of necessary expenses. *Fawcett v. Mount Airy,* 134 N. C., 125; *Wadsworth v. Concord,* 133 N. C., 587; *Robinson v. Goldsboro,* 135 N. C., 382; *Commissioners v. Webb,* 148 N. C., 122; *Bradshaw v. High Point,* 151 N. C., 517; *Ellison v. Williamston,* 152 N. C., 147. But while this power which resides in the municipal body is not restricted by the Constitution, it was provided by that instrument, with reference thereto, as follows: "It shall be the duty of the Legislature to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessments and in contracting debts by such municipal corporations." Const., Art. VIII, sec. 4. It has, therefore, been held by this Court that the Legislature may require a favorable popular vote, as preliminary to the valid issue of municipal bonds, even for necessary expenses, and may otherwise restrict or limit the power of cities and incorporated villages (or towns) to tax or contract debts, either directly or indirectly; and when the Legislature has exercised the power thus conferred upon it, the local authorities must heed its mandate and proceed accord-

ingly. *Evans v. Commissioners,* 89 N. C., 154; *Wadsworth v. Concord, supra; Robinson v. Goldsboro, supra; Perry v. Commissioners,* 148 N. C., 521; *Burgin v. Smith,* 151 N. C., 566; *Jones v. New Bern,* 152 N. C., 64; *Ellison v. Williamston, supra.* For this reason we held in *Wharton v. Greensboro,* 146 N. C., 356, that the act of 1889, ch. 486 (Revisal, sec. 2977), was a constitutional enactment, and that under it, where other provision had not been made by subsequent legislation, no city or town could contract a debt, pledge its faith, or loan its credit, for the maintenance of internal improvements, or for any special purpose whatsoever, to an extent exceeding in the aggregate 10 per cent of the assessed value of the real and personal property situated therein; and that any levy of taxes above that limit would be null and void.

While in respect to cities and towns it is said that the power of the Legislature to control them, in the exercise of their municipal powers, is somewhat more restricted than in the case of counties, yet both are but instrumentalities of the State, for the administration of local government, and their authority as such may be enlarged, abridged, or withdrawn entirely at the will or pleasure of the Legislature. *Lily v. Taylor,* 88 N. C., 490; *Jones v. Commissioners,* 137 N. C., 592; *Wharton.v. Commissioners,* 146 N. C., 356; *Burgin v. Smith,* 151 N. C., 562.

Whether these provisions of law to be found in the Constitution and statutes, and as construed by this Court, are in accordance with a sound and wise public policy, and whether some additional curb should not be placed upon the power vested in municipalities to tax so as to prevent the present tendency towards extravagance and the other evils in the administration of their affairs, is a matter which is assigned, under our form of government, to the good sense and wisdom of the Legislature. We must apply the law as we find it to be, not as we think it should be.

Having stated these general principles, it must be admitted, in consideration thereof, that the plaintiff in this case, the town of Murphy, had the power to issue the bonds for the purpose of making the improvements described in the resolution

of its board of commissioners, without any vote of the people therein, unless restrained by some act of the Legislature from so doing.

It is conceded that by Private Laws of 1889, ch. 239, sec. 17, such a restraint was imposed, and that if that section is still in force the bonds cannot be lawfully issued without the sanction of the people, to be signified at the polls by a majority vote of the qualified registered voters of the town. But it is contended that section 17 of that act was repealed by Private Laws of 1911, ch. 387, sec. 2. The latter section provides for the repeal of section 17 of chapter 239 of the *Public* Laws of 1889, whereas that chapter incorporates the Fayetteville and Albemarle Railroad Company, and makes no reference whatsoever to the town of Murphy or to its corporate affairs. The original charter of the town of Murphy is chapter 239 of the *Private* Laws of 1889, and section 17 thereof is the one which relates to the power of the town to create a public debt, and places a restriction upon that power by requiring the approval of the people at the polls before any such debt is contracted. Section 1, chapter 387 of the Private Laws of 1911, amends section 1, chapter 239 of the Private Laws of 1889, the two sections referring to the same subject-matter, viz., the territorial limits of the town, the later act extending the same. A bare statement of the facts is sufficient to convince any reasonable mind that a clerical mistake was committed in referring to section 17, chapter 239 of the Laws of 1889, as being a part of the Public Laws of that year, it being manifest that the Private Laws were intended, as the two acts relate to the town of Murphy, and chapter 239 of the Public Laws of 1889 to the incorporation of a railroad company in another part of the State. The very question presented here was discussed and decided in *Fortune v. Commissioners,* 140 N. C., 322, wherein we said: "One difficulty in construing the act, and an insuperable obstacle, as the plaintiff's counsel contend, in the way of enforcing the provision which we have quoted, is that there is no reference therein to any particular chapter of the Laws 1905. It is argued that this is a patent ambiguity which defeats the

operation of that clause. 'A misdescription or misnomer in a
statute will not vitiate the enactment or render it inoperative,
provided the means of identifying the person or thing intended,
apart from the erroneous description, are clear, certain, and
convincing.' Black Int. of Laws, sec. 58. Under this rule, we
may call to our aid anything in the act itself or even in the
alleged erroneous description, which sufficiently points to some-
thing else as furnishing certain evidence of what was meant,
though the reference to the extraneous matter may not in itself
be full and accurate. The rule, even when literally or strictly
construed, does not require that the erroneous description shall
be altogether rejected in making the search for the true mean-
ing; but it may be used in connection with anything outside of
the statute to which it refers and which itself, when examined,
makes the meaning clear. The erroneous description may in
this way be helped out by extraneous evidence. Black, *supra,*
sec. 38. But ours is not so much an erroneous as an inaccurate
description, and the question is whether its words are adequate
to express with sufficient certainty the intention of the Legisla-
ture. It has been held that if a later act expressly refers to a
designated section of an earlier one, to which it can have no
application, but there is another section of the prior act to
which, and to which alone, in view of the subject-matter, the
later act can properly refer, it will be read according to the
manifest purpose of the Legislature, and the misdescription
will not prevent the reasonable construction that the Legisla-
ture intended to refer to the latter section. *School Directors v.
School Directors,* 73 Ill., 249; *Plank Road Co. v. Reynolds,*
3 Wis., 258; Black, *supra,* sec. 28." That decision clearly
covers this case in principle, and it has been approved in the
following cases: *Commissioners v. Stedman,* 141 N. C., 448;
*McLeod v. Commissioners,* 148 N. C., 77; *Pullen v. Corpora-
tion Commission,* 152 N. C., 548. As said in the *Fortune case,*
"We have no doubt as to the intention, and conclude that the
mere designation of the section was sufficient, under the cir-
cumstances, for us to identify with certainty the chapter and
section to which the reference was made." We may add

thereto, so as to emphasize the striking similarity between the two cases, that the reference in this case by chapter and section, corresponding as it does with the only chapter and section of the Laws of 1889, public or private, that relate to the subject-matter, is fully sufficient to show the purpose of the Legislature, and the word "Public," in the reference, may be treated as a misprision of the draftsman or copyist, and the error should not be allowed to defeat the otherwise plainly and accurately expressed will of that body. The case of *Improvement Co. v. Commissioners,* 146 N. C., 353, is also directly in point. There Washington County was inserted in the House Journal for Robeson County, in recording the passage of the bill in that body; but the number of the bill corresponded with the number of a bill to authorize the issue of bonds by Robeson County. This and other "pointers" and "earmarks" were held sufficient to show that Robeson County was intended instead of Washington County in the House record, the reference in the latter to Washington County being manifestly a mere clerical error, which was held insufficient to defeat the plain legislative purpose.

Since this opinion was prepared, our attention has been called to an act of the Legislature entitled "An act to amend ch. 73, sec. 2916, of the Revisal, concerning towns, so as to confer upon cities, towns, and municipalities power to construct and maintain waterworks, sewerage systems, and other public utilities," being chapter 86 of the Public Laws of 1911. This act is not mentioned in the case agreed, nor is there any reference to it in the brief of counsel, and it seems to have been overlooked; but we are now asked to consider it and determine whether it has any application to the facts of this case. This is a most reasonable request of counsel, as it is important that the validity of the bonds in question should be free from all doubt or uncertainty.

We do not think, after a careful reading of the statute, that it was intended to affect bonds issued by the town of Murphy, under its charter and the amendments thereto. If the general act of 1911 applies to any municipality which has special pro-

visions upon the same subject—and this we are not now required to decide—it does not apply to this case, as we have virtually held at this term, in *Red Springs Hotel Co. v. Town of Red Springs,* since the statute was called to our notice. If it did not apply to that case, it certainly does not to this one. There the amendment to the charter of the town was passed at the session of 1911, a few days before the general law was enacted, while in this case the charter was amended, so as to authorize the issue of bonds without a vote of the people, two days after the general act was ratified, showing very clearly that the said act was not intended to apply to the town of Murphy. Besides, the act of 1911 is an amendment of chapter 73 of the Revisal and section 2916 thereof. It is provided by section 2918 as follows: "This chapter shall apply to all incorporated cities and towns where the same shall not be inconsistent with special acts of incorporation or special laws in reference thereto." This section shows that this case is not affected by the act of 1911, for the issuing of the bonds without an election is specially provided for in the amended charter of the town.

We find no error in the case or record, and therefore affirm the judgment.

Affirmed.