L. D. BURWELL ET AL. v. TOWN OF LILLLINGTON.

(Filed 1 March, 1916.)

1. **Municipal Corporations — Bond Issues—Necessary Expense—Legislative Powers—Constitutional Law—Voters.**

While an incorporated town may issue bonds for necessary expenses without submitting the question of their issuance to its voters, the authority resides in the Legislature to restrict its power so as to prevent abuses in that respect; and where the Legislature has passed an act authorizing a town to issue bonds, provided the proposition is submitted to and approved by its voters, issuance of bonds without meeting this requirement is invalid. Constitution, Art. VIII, sec. 4.

2. **Same—Statutes—Amendatory Acts—Rate of Interest—Material Changes.**

Where the Legislature has authorized a town to issue bonds for a necessary expense upon the approval of its voters, specifying that the bonds bear interest at a rate not exceeding 5 per cent, and after such issuance has met the approval of the voters of the town the Legislature authorizes the bonds at 6 per cent interest, the latter act will be construed as amendatory of and incorporated into the first, and the difference between the rates of interest authorized being material, bonds issued at the higher rate are invalid without the required approval of the voters of the town.

**3. Municipal Corporations — Bonds — Sewerage — Water-works—Local Questions—Courts.**

The validity of bonds for sewerage purposes issued in compliance with a statute requiring the approval of the voters of a town are not affected by the invalidity of bonds issued under a separate and distinct act authorizing the town to issue bonds for water-works and sewerage purposes, passed by another Legislature, the question as to whether the sewerage would be advantageous without a water-works system being one for the local authorities, and resting with the voters of the town or upon subsequent legislation.

ALLEN, J., dissenting.

CIVIL ACTION from HARNETT, heard by *Lyon, J.,* on 12 January, 1916, upon a motion to continue to the hearing a restraining order previously issued by *Judge Daniels,* for the purpose of enjoining the issue of certain water-works and sewerage bonds to the amount of $25,000.

The town of Lillington was authorized by Private Laws 1911, ch. 283, to issue bonds to the amount of $15,000, bearing interest at a rate not exceeding 5 per cent, for water-works and sewerage purposes. The act provided for an election by the people upon the question whether or not the bonds should be issued. This election was duly held and the issue was authorized by a majority of the qualified voters of the town. After this election was held and the result in favor of the bonds declared, the Legislature, by Private Laws 1913, ch. 55, amended the prior act of 1911, ch. 283, by striking out "five" in section 2 and inserting "six," so that the bonds would bear not exceeding 6 per cent interest. There was nothing else in the act. Subsequently, by Private Laws 1913, ch. 141, the town was authorized to issue $10,000 of bonds for the purpose of constructing and maintaining a sewerage system and a sewage disposal plant, after a like vote by the people. An election was thereafter held and the bonds authorized by a majority of the voters. There was no objection urged against either of the elections, it being admitted that they were duly and regularly held and conducted. The court refused to continue the injunction to the hearing and dissolved the restraining order, and plaintiff appealed.

*M. T. Spears and Charles Ross for plaintiffs.*
*Manning & Kitchin for defendant.*

WALKER, J., after stating the case: The plaintiff contends that the town is not authorized to issue the $15,000 of bonds for water-works and sewerage purposes, as the original act was amended in a material respect, the limit of the rate of interest having been raised from 5 to 6 per cent, which necessitated a new election upon the question of issuing those bonds, the Legislature not having directed in the amending act that another election should be dispensed with. As the bonds in ques-

tion are proposed to be issued for necessary expenses, the town might have acted without a vote of the people, as we have so often held, but the authority resides in the Legislature, under Constitution, Art. VIII, sec. 4, to restrict the power of cities and towns in respect to taxation, contracting debts, or loaning their credit, so as to prevent abuses in that respect by municipal corporations. It may provide that before bonds are issued by such a corporation there shall be an election held, at which the people may express their will in regard to the matter, and that no bonds shall be issued, and no debt contracted, even for its necessary expenses, without the approval of the people at the polls. The question is fully discussed in *Town of Murphy v. Webb,* 156 N. C., 402, and the authorities cited, and there is no need of further comment upon it.

The legislative acts under which it is proposed to issue the bonds are valid, and the latter will not be valid unless the requirements of those statutes are complied with. The change from 5 to 6 per cent was a radical one. The people might be willing to vote in favor of an issue of bonds at the lower rate when they would not give their assent to one at the higher rate. The water-works bonds, under act of 1911, ch. 283, could run for a period of not less than fifty years. If the date of their maturity had been fixed at fifty years the difference in interest for the entire period would be $7,500, and if allowed to run for the shorter period of thirty years, the difference would be $4,500. So that it is easily seen that the two proposals, one for an issue of $15,000 at 5 per cent and the other for the same amount at 6 per cent, are widely different. It may be that the town could not float the bonds at 5 per cent, but, if not, the difficulty is for the Legislature and not for us to remedy. It may be that the Legislature did not provide in the amending act that no further elections should be necessary for the very reason that it considered the increase in the rate of interest as a material change in the former act, and one that the people should approve before it becomes effective.

The power to provide for necessary expenses by taxation or the contraction of a debt without consulting the people, upon whom the burden of payment will rest, is one that should be exercised with great care and circumspection, and while due regard should be had for the public welfare, the consequent burden which will fall upon the people should be made as light or as little onerous as is consistent therewith. It is for this reason that the Legislature has frequently required that the power to tax or to issue bonds shall be exercised only with the consent of the people, upon the just and equitable principle that he who is to pay should have some voice in creating the debt or imposing the liability. Not a bad policy for the State to adopt when it does not seriously interfere with raising current necessary expenses and can be done without

detriment to the public weal. The amendment to the act of 1911, ch. 283, by which the rate of interest was increased to 6 per cent so changed the substance of it, therefore, as in effect to make it a new act, and one so essentially different from the original as to require another election.

It was said in *Brown v. Spray,* 158 N. C., 44, 47: "It is familiar doctrine that an original act and an amendment to it shall be considered as one act, and, so far as regards a cause of action after the amendment is adopted, shall be construed as if it had read from the beginning as it does with the amendment added to it or incorporated in it. Black on Interpretation of Laws, pp. 356, 357." Revisal, sec. 2832. However that may be, it is clear that the Legislature, when it increased the rate of interest by the amendment, did not intend to repeal the clause requiring an election. If it had intended to do so, it was quite easy to say as much in the amending act. We are of the opinion that there must be another election to determine whether bonds bearing a rate of interest not exceeding 6 per cent shall be issued, and that the court erred in dissolving the restraining order and refusing to grant an injunction to the hearing, as to the water-works and sewerage bonds authorized by the original act.

As to the sewerage bonds authorized by the act of 1913, and a vote of the people at an election held thereunder, we do not see why they are not valid. The objection to them urged by the plaintiff is that they are so connected with and dependent upon the other issue of bonds for water-works that if the latter cannot be issued without another election, the sewerage bonds for $10,000 should not be. But this is a matter which we cannot determine. We have nothing to do with the question as to how the town will dispose of the bonds, or apply the proceeds of their sale in constructing a sewerage system, what kind of sewerage plant it will adopt and what provision it will make for utilizing it. These are matters for the decision of the local authorities. The two acts were passed at different sessions of the General Assembly and do not refer to each other, although they may relate somewhat to the same subject-matter. The Legislature has, by a separate and independent statute, authorized the issue of bonds to the amount of $10,000 for sewerage purposes, if the issue should be approved by the people at an election to be held as provided by the act. This approval has been given, and the bonds, if issued, will be valid.

Suppose an election had been held to determine whether bonds for sewerage purposes should be issued, and this was done and the issue of bonds approved by the people before any election had been held upon the other question as to the water-works bonds, could it be successfully contended that the election as to sewerage bonds is void because the one as to water-works bonds had not been held? Or, if the issue of

sewerage bonds had been approved by the people, and they had dis-approved the issue of water-works bonds, would the sewerage bonds be invalidated by disapproval of the other bonds? The answer to this question obviously must be in the negative. The two propositions are not made interdependent by the statutes. The Legislature could have made them so, but did not.

What must be done to make the issue of sewerage bonds practically serviceable or useful to the town is a question not for our determina-tion, but is one concerning the administration of the town's business affairs.

It may not be wise or expedient to issue bonds for the purpose of constructing and maintaining a sewerage plant, without having the means or facilities for operating it or making it effective. But this is a question, as we have said, for the decision of the local authorities, and we must leave it with them. They may not be embarrassed by a lack of authority to issue the water-works bonds, as the people may yet give their consent at the polls, and confer the necessary power to issue them, or the Legislature may grant relief, or some other way found out of the dilemma; but however this may be, we are confined simply to the question of law involved, and cannot go beyond it.

The other objections urged to the validity of the bonds, if issued, are wholly untenable, and require no separate discussion.

In respect to sewerage bonds the decision was right, and as to the other bonds it was wrong. Judgment will be modified according to this opinion. The costs of this Court will be divided equally between the parties.

Modified and affirmed.

ALLEN, J., dissenting.