(State v. Midgett, 85 N.C. 539; Coble v. Shoffner, 75 N.C. 43; State v.Matthews, 48 N.C. 452; cited and approved).
The facts are substantially the same as in the preceding cases ofMcGwigan v. The Railroad, except that in these cases, the freight was shipped from a point within the State to a point within the State, and so the question of inter-state commerce did not arise.
There was a judgment for the plaintiff and the defendant appealed.
This action is brought to recover a penalty which, it is alleged, the defendant has incurred by a violation of the statute, (The Code, § 1966), which provides that "It shall be unlawful for any railroad corporation operating in this State, to charge for the transportation of any freight of any description over its road a greater amount, as toll or compensation, than shall at the same time be charged by it for the transportation of an equal quantity of the same class of freight transported in the same direction over any portion of the same railroad of equal distance; and any railroad company violating this section, shall forfeit and pay the sum of two hundred dollars for each and every offence, to any person suing for the same. Nothing in this chapter shall be taken in any manner, as abridging the right of any railroad *Page 376 
company from making special contracts with shippers of large quantities of freight, to be of not less in quantity or bulk than a car load."
The defendant contends first, that this statute is penal, and must, therefore, be construed strictly, and so construed, what it is conceded it did, is not forbidden by the law.
It is an old, but not very precisely defined rule of law, that penal statutes must be construed strictly. By this is meant no more than that the Court in ascertaining the meaning of such a statute, cannot go beyond the plain meaning of the words and phraseology employed in search for an intention not certainly implied by them. If there is no ambiguity in the words or phraseology, nothing is left to construction — their plain meaning must not be extended by inference, and when there is reasonable doubt as to their true meaning, The Court will not give them such interpretation as to impose the penalty. Nor will the purpose of (438) the statute be extended by implication so as to embrace cases not clearly within its meaning. If there be reasonable doubt arising as to whether the acts charged to have been done, are within its meaning, the party of whom the penalty is demanded is entitled to the benefit of that doubt. The spirit of the rule is that of tenderness and care for the rights of individuals, and it must always be taken that penalties are imposed by the legislative authority only by clear and explicit enactments. That is, the purpose to impose the penalty must clearly appear. Such enactments, as to their words, clauses, several parts and the whole, must be construed strictly together, but as well, and as certainly in all respects, in the light of reason.
This rule, however, is never to be applied so strictly and unreasonably as to defect the clear intention of the Legislature. On the contrary, that intention must govern, in construing penal as well as other statutes. This is a primary rule of construction, applicable in the interpretation of all statutes. The meaning of words and sentences shall not be narrowed or strained so as to exclude the meaning intended and while the purpose of the statute shall not be extended by implication, it shall not, on the other hand, be narrowed so as to abridge the intention that reasonably appears from its words, phraseology and constituent parts. If words and sentences, and parts of sentences, having no very definite signification in their ordinary use, are employed and clearly intended to have a particular and definite meaning and application, and this appears from their particular use, connection and application in the statute, that meaning and application must be accepted as proper and controlling. If the intention to impose the penalty certainly appears, that is sufficient, and it must prevail. Otherwise, the legislative intent would or might be defeated by mere interpretation, which can never be allowed. Bacon's Abr. Tit. Statute 9, Rule 9; United States v. *Page 377 Willberger, 5 Whea., 76; Potter's Dwarris on Stats., 245, and note 35, and cases there cited; State v. Midgett, 85 N.C. 539; (439)Coble v. Shoffner, 75 N.C. 43.
Now, applying the rule of construction, thus explained, to the statute above set forth, it clearly appears from its terms, its constituent parts, their bearing upon each other, and taking it as a whole, that its purpose is to prohibit and prevent each railroad corporation, doing the business of transporting freights over its railroads in the State, from charging one shipper of freights, at any time while its current list of charges for carrying freights remains unchanged, a greater amount of compensation for carrying a certain quantity of a certain class of freight a certain distance in a particular direction on its railroad, than it charges another shipper for transporting an equal quantity of the same class of freight an equal length of distance in the same direction on the same railroad, or its branches, whether the transportation for each is over the same, or a different part of the same road, and whether the freight of one shipper is carried a greater distance than that of another, with the exception, that such corporation may make special contracts without restraint, as to rates of compensation with shippers of large quantities of freight, not less than a car load. That is to state the same differently, the compensation to be charged shippers respectively for carrying an equal quantity of the same class of freight for each, going in the same direction, must be equal in amount for equal distances, no matter on what part of the road, and although the freight of one shipper is to be transported a different and longer distance than that of the other. In such case, the charge to each must be the same for any equal distance. The statute really embodies and prescribes a scheme to prevent discrimination and secure equality and uniformity in charges for transporting freights by railroad companies doing business in this State.
An analysis of the material parts of the statute will serve to (440) show that its purpose is what it is thus stated to be.
1. It plainly embraces all railroad corporations, whether incorporated by the laws of this State or not, "operating," that is, doing the business of transporting freights over their respective railroads in this State. The language used is broad and comprehensive — in no sense, that can reasonably be attributed to it, does it imply exception or limitation. The word "any" is used in the sense of each, every and all. There is nothing in the statute, its terms, nature or purpose, that suggests that it does not embrace every and all such corporations. Nor is there anything in the nature of a foreign railroad corporation doing such business in this State that gives it any legal advantage or immunity in any such respect. When it comes into this State to do business, it at once *Page 378 
voluntarily becomes subject to its laws regulating the business of transportation on railroads. Although it may not be the absolute owner of the railroad it uses, except as lessee, it is the temporary owner for the purposes of its business, and answerable as the owner in that respect.
And as to a railroad corporation created by and under the laws of this and an adjoining and other States, it is completely subject to the laws of this State, except as otherwise expressly provided in its charter, because it is a corporation of this State, and within its jurisdiction and control, just as are all other corporations created by its authority, subject to the limitation mentioned.
2. The clause, "to charge for the transportation of any freight," c., implies to settle, require or demand of the shipper, as of right, certain compensation for the transportation of any freight already transported, or delivered to the corporation to be transported. As to this, the penalty is incurred when the charge is certainly made against the shipper, in the case provided against by the statute. It cannot be that the compensation charged must first be paid, because it is made unlawful "to charge" otherwise than is allowed. This does not, in any (441) ordinary sense, imply to receive the compensation, and there is nothing that, in terms or by just implication, goes to show that any such meaning was intended. The purpose is to give the penalty at once upon the making the charge, and thus the more certainly to prevent the evil intended to be suppressed, and a violation of the statute.
3. The phrase, "a greater amount as toll or compensation," c., obviously means to charge one shipper of a certain class of freight over its road, in a particular direction, greater compensation than is charged to another shipper of "an equal quantity of the same class of freight, transported in the same direction, over any portion of same railroads ofequal distance," not necessarily over the same distance, but any equal distance. The words "greater amount," "an equal quantity," in the same direction," and "of equal distance," and "over any portion of one railroad of equal distance," are employed to fix and establish the basis of the equality of the charge allowed to be made. This equality of charge is not limited to the same but to an "equal quantity," not to the same, but to an "equal distance," over any part of the same road. These provisions are signification and important, and must receive such interpretation as their use and meaning may allow, and as will give the statute intelligent practical effect.
It would be comparatively seldom that two shippers would ship precisely the same quantity of the same class of freight; and the number of instances in which two shippers would ship exactly the same quantity of freight of the same class from and to the same places, would be very small indeed, as compared with the vast number of shipments that would *Page 379 
generally be made from the same place to a large and indefinite number of other places. The words employed, in themselves do not imply such a restricted meaning, and this must not be narrowed so as to defect the purpose of the statute, reasonably appearing. It will be observed, that there is an absence of any provision in the statute, in this connection, or at all, that "equal distance" shall apply to cases (442) where the freight of two shippers is shipped from and to the same place, and this omission seems to have been intentional, because the express provision is "over any portion of the same railroad, of equaldistance." If equal, thus used, means the same distance, then why are the words "over any portion," used? In that case, they would be unnecessary, mere surplusae [surplusage], and meaningless. This cannot be allowed in order to give the statute the narrow and unreasonable effect just pointed out.
The statute does not, in terms or by reasonable implication, authorize such corporations to graduate their charges of compensation for carrying freights, by the different lengths of distance the same are to be transported. Indeed, the purpose is to prevent that very thing, and to establish the rule of equality of charges among shippers of the same class of freights for all "equal distances," although the freight of one may be carried further than that of the other. For the equal distance, the charge must be the same, and the same as that charged to any shipper over any part
of the same road.
It is expressly made unlawful, in the cases provided for in the statute, to charge one of two shippers of freight, greater compensation than another, and there is no exception or distinction made or allowed in this respect, upon the ground that the freight of one of two shippers is to be carried a greater distance than that of another. The end to be secured is, to make the compensation, to the extent of the "equal distance" the same, and not greater as to one shipper than another, although the freight of one of them is carried a greater distance than the equal distance. Hence, if such a corporation should transport for one shipper a certain quantity of freight of a particular class in one direction one hundred miles over its road, for ten dollars, and it should charge another shipper of an equal quantity of the same class of freight in the same direction, at the same time, fifty miles, ten dollars, it would charge the latter just double the amount of compensation it (443) charged the former for the equal distance of fifty miles. The presumption would be in that case, that the charge was made for the whole distance the freight was carried for each shipper, because in the order of business, the corporation would not carry freight to the end of fifty miles, the equal distance, for compensation, and beyond that for *Page 380 
nothing! It is not sufficient to say that the corporation would have carried the freight, that stopped at the end of fifty miles, one hundred miles for the same price, because, the shipper for the shorter distance, had the right to be charged only a sum of money equal in amount to that charged to the shipper for the longer distance, "over any portion of samerailroad of equal distance." The statute so expressly provides. "Equal distance" clearly means an "equal distance" any where in the same direction over the same road, without reference to the greater distance than the "equal distance" the freight of one of two shippers may be carried. It would certainly be most unreasonable, and trifling with a serious matter, to conclude that the Legislature intended simply to make it unlawful and penal for railroad corporations to charge in the case provided for, and against one shipper of freight, a greater compensation for transporting the same than another, only where both ship from and to the same points. Neither the terms nor the reason of the statute warrant, much less do they require, so narrow an interpretation. Thus construed it would be a ridiculous mockery!
4. In the nature of the business of transporting freights, railroad corporations must classify such freights, and the charges for carrying the same, and such classifications, when established, are observed in the course of business, until for some reason, they are changed or modified. Besides, the statute, (The Code, § 1965), which is a part of that now under consideration, requires each of such corporations to "keep (444) a list of its charges for carrying freight, specifying name of place, class of freight, and charge for carrying same," posted in a conspicuous place in the depots or places where freights are received for such shipment, and such charges cannot be increased without giving fifteen days notice. The presumption is, that such corporations obey the law, and make and observe the list of charges thus required to be made, while they continue current and unchanged.
The clause, "shall at the same time be charged," c., must be construed in connection with the usage and statutory provision just mentioned, and so interpreted, it embraces the period of time while such lists continues unchanged and current. The words "same time" are used in the sense of the same period — same occasion — while the lists continue current. If they be taken literally, in their narrowest sense, as they appear in the statute, its operation would be confined within a very narrow compass. It would be very seldom indeed, that two shippers of freight would ship precisely equal quantities of the same class, in the same direction, over the same road at the very same time. In view of the other provisions of the statute, and its purpose, and to give it practical effect, the interpretation thus given must be the necessary and true one. *Page 381 
5. As we have already seen, the clause, "an equal quantity of the same class of freight," c., is intended to designate the quantity that fixes the equality and uniformity of compensation that may be charged. Thus, if one ships ten bales of cotton, and another five bales, although the former ships more than the latter, the compensation charged to each for transporting five bales must be equal, whether that be much or little, and the shipper who has more than five bales must, as to the excess, be charged the same rate of compensation as that charged each for the equal quantities. This is necessary to preserve the equality of charges.
6. The words, "transported in the same direction," c., plainly (445) imply in the direction the freights are carried over the railroad from the depot, or the place where the shipments were made, and this embraces branches of the same road in that direction, if these are used in connection with, and as part of, the same road. If the corporation should use two or more distinct railroads, not in connection, it may be that it could have a different and distinct class of charges for each of its roads.
7. The clause "over any portion of same railroad," c., is likewise, as already explained, intended to secure equality and uniformity of charges, and to exclude the conclusion, that "equal distance," implies the same distance.
The exception in the Statute, allowing railroad companies to make "special contracts" with shippers "of large quantities of freight, to be of not less in quantity or bulk than one car load," tends strongly to show the correctness of the construction we have given it. If the words and clauses are to be taken in the literal and very narrow sense contended for by the counsel for the defendant, then of what use is the exception? Accepting their interpretation the defendant could, as to all shipments, discriminate at its pleasure in its charges of compensation, except where two or more shippers happen to ship precisely equal quantities of the same class of freight, going precisely equal distances in the same direction, and from and to the same places. Such cases would seldom, if ever, occur, and the Statute so construed, would be practically inoperative. It would suppress no evil. The obvious purpose of the exception is to except large shipments of freights from the stringency of the statute. It can have no other practical meaning.
In aid of the general purpose of the statute, above indicated, the Legislature passed a subsequent statute (Acts 1879, ch. 237; The Code, § 1968), forbidding railroad companies "to pool freights, or to allow rebates on freights," the object being, to prevent unreasonable competition between two or more railroad companies at (446) *Page 382 
"competing points," and to prevent discrimination as to compensation for carrying freights by means of "rebates."
The title of the statute harmonizes with its terms and constituent parts, and plainly designates its purpose, and this strengthens the interpretation given above. In Acts of 1874-'75, chap. 240, it is entitled "an Act to prevent discrimination in freight tariffs by railroad companies operating in this State"; and as brought forward in The Code, chap. 49, entitled "Railroads," § 1966, it is placed immediately under the title, "Discrimination in freight unlawful," c.
"Discrimination in freight tariff by railroad companies," "discrimination in freights," and like expressions, as applied to such companies, are terms and phrases well understood in the nomenclature of transportation over railroads. They may have a wider signification, but for the present purpose they certainly imply to charge shippers of freight, as compensation for carrying the same over railroads, unequal sums of money for the same quantity of freight, for equal distances, more for a shorter than a longer distance, more in proportion of distance for a shorter than a longer distance; more for freights called "local freights," than those designated "through freights;" more for the former, in proportion of the distance such freights may be carried, than the latter, the railroad companies being prompted to make such unequal charges by unreasonable competition between two or more of them at competing points, more or less important, and to make unreasonably high charges at other places where there is the absence of competition, because they have power to make them, and exact payment in order to make unjust gain, and, as well, to help pay the cost of such unnatural competition.
Nor, in this connection, is it improper to notice the public fact, that at the time the statute under consideration was enacted, there was (447) a general complaint as to the alleged grievance that such unequal and oppressive charges were made by railroad companies in this State, greatly to the public prejudice. The statute — its terms and various parts, including its title — alike point to such evil, and provides for its suppression.
The purpose thus attributed to the statute, clearly appears from its terms, its constituent parts, their bearing upon each other, and the whole taken together. If there could be any doubt as to its true meaning, its title may be resorted to, to strengthen the conclusion reached, especially as it does not in any respect contravene, but on the contrary, harmonizes with the provisions of the statute, and points in broad and comprehensive terms to the mischief to be remedied. State v. Matthews, 48 N.C. 452;United States v. Fisher, 2 Cr., 386; Hadden v. Collector, 5 Wall., 107; Potter's Dwar. on Stats., 102 and n. 4; United States v. Railroad,91 U.S. 72; Platt v. Railroad, 99 U.S. 48. *Page 383 
On the argument, one of the counsel for the appellant, pointed out with much force the possible evil consequences of such an interpretation of the statute to the defendant, shippers of freight, and the public generally. This argument would have force if the legislative intent were doubtful, but when this unmistakably appears, as it certainly does here, it must prevail.
Such an argument might well be addressed to the Legislature. If the statute is too severe and impracticable, the remedy lies in legislative action. It is not the province of the courts to determine the wisdom and expediency of statutes, and what they should or should not be, but what they are, and to apply them as occasion may require.
It appears, that according to its current list of charges for carrying freight, the defendant charged for carrying fertilizers from Wilmington in this State, to Rocky Mount in this State, over its railroad, a distance of one hundred and thirty-seven miles, two dollars and fifty centsper ton, and at the same time, the same amount, for carrying a (448) ton of the same class of freight, from the same place, in the same direction, over the same part of its railroad, an equal distance, and thence over its branch road to Tarboro in this State, the greater distance of eighteen miles; and that it carried for the plaintiffs from Wilmington to Rocky Mount, ten tons of fertilizers, and charged them for carrying the same, twenty-five dollars, and at the same time, it carried for R. H. Battle, from the same place, over its same railroad, in the same direction, to Tarboro, the greater distance of eighteen miles, seventeen tons of fertilizers, of the same class of freight, and charged him forty-two dollars and fifty cents. To simplify this statement: the defendant charged the plaintiffs two dollars and fifty cents, for carrying a ton of fertilizers one hundred and thirty-seven miles, over its road, and at the same time, charged R. H. Battle but the same amount, as compensation for carrying a like ton of fertilizers, in the same direction, over its same railroad, a greater distance, to-wit, one hundred and fifty-five miles. In the orderly course of business, this latter charge was for the whole distance, and not simply for a part of it ending at Rocky Mount. The presumption is, nothing to the contrary appearing, that the charge was for the whole distance. Hence it must be, that the defendant charged the plaintiff a greater amount as compensation for carrying their ton of fertilizers, for the distance of one hundred and thirty-seven miles of its railroad, than it did at the same time charge R. H. Battle, for carrying an equal quantity of the same class of freight in the same direction and equal, in this case the same distance, over its same railroad; and so, also, the defendant charged the plaintiff for carrying ten tons of fertilizers one hundred and thirty-seven miles over its railroad, twenty-five *Page 384 
dollars as compensation, and at the same time charged another shipper, R. H. Battle, an amount for carrying an equal quantity of the same class of freight, an equal distance, and in this case, the same (449) distance, in the same direction, over its same railroad. We have already seen that the fact that the defendant carried for one of these two shippers, at the same time, more than ten tons, cannot affect the result. They had equal quantities to the extent of ten tons, and for these equal quantities, it charged one of them a greater amount as compensation than the other for an equal distance, and this is the material fact in this respect and connection. The defendant therefore, incurred the penalty sued for in this action, unless another defence relied on by it must be sustained as good and available.
The defendant contends secondly, that its charter embodies a contract, founded in several material respects upon valuable considerations, between it and the State of North Carolina, and that among the stipulations contained in it, is that allowing the defendant to make by-laws and regulations for its government, not inconsistent with the laws of this State and the United States, and also the following: "and they (the defendants), shall be entitled to receive and demand the following rates, to-wit: not exceeding four cents a mile for toll, and nine cents a mile for transportation per ton of 2000 pounds; and for the transportation of passengers, not exceeding six cents per mile for each passenger."
It further insists, that if the statute under consideration is intended to embrace it, then, as to it, the statute is inoperative and void, because it impairs the obligation of the contract, the material clause of which is set forth above.
It is not necessary to decide whether or not the clause of the charter of the defendant, just quoted, is, and must be treated as such a contract on the part of the State, as prevents it, in the exercise of legislative power and authority, from regulating and establishing the charges of compensation of the defendant for carrying freights and passengers over its railroad, because the statute under consideration does not (450) undertake to abridge or interfere with the rights of the defendant to charge any amount as such compensation it may see fit, within the maximum of charges prescribed and allowed in its charter. As said above, that statute does not provide a maximum or minimum, or any charge, or schedule of charges as compensation for carrying freights. It simply requires equality and uniformity in such charges and forbids the contrary under a penalty.
The charter of the defendant does not in terms or by necessary or just implication, provide that it may charge one shipper for carrying his freight of a particular class, one price, and another shipper a *Page 385 
different and greater price, for the like and equal service, with or without regard to the quantity of freight, or the distance it may be carried. On the contrary, the reasonable implication is, that its charge shall be equal, in proportion, against all shippers alike, as to quantity and distance. The defendant is authorized in terms, to charge as compensation for carrying freights, not exceeding a fixed price per ton per mile. This seems to contemplate uniformity and equality per ton per mile, extended to all shippers of freight, whatever may be the price fixed by the defendant. This is just, and comports with equal fairness to all shippers, although it may not always suit the better convenience and advantage of the defendant. Moreover, the defendant exercises franchises and privileges granted by the Legislature for the common public good. Besides, the purpose of the State to abandon or part with its right and power to require the defendant to make its charges for carrying freights equal and uniform as to quantity and distance to all shippers alike, is not to be presumed, nor can it appear from mere inference. Such purpose must be deliberate, and appear clearly from positive terms, express grant, or necessary implication.
It is difficult to understand how, upon principle, the Legislature can, by contract or otherwise, effectually grant, sell, or part with, to any extent, any part of an essential power of government. If (451) this can be done at all, it can only be done by a clearly expressed purpose to do so. The presumption is against such purpose. This rule of interpretation is elementary and important, and should always be strictly observed.
The Legislature, for public considerations, granted to the defendant the right to fix within a maximum, its compensation for carrying freights, but this is a very different thing from the right to discriminate for any purpose or consideration, in any way, or in any respect, as to compensation for carrying freight. There is no provision in the defendant's charter, that in terms or by necessary implication, declares the purpose on the part of the Legislature to conclude the State against its exercise of the right and power to forbid and prevent such discrimination.
The defendant assigned as error, the refusal of the Court to grant its motion to dismiss the action, upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The Court properly refused to grant the motion. The material facts were agreed upon in writing and submitted to the Court for its judgment, and thus they passed into the record, and the judgment was founded upon these. Moreover, it was agreed by the parties that the Court should make an order allowing the plaintiffs to amend their complaint, so as to make it conform to the facts agreed upon. *Page 386 
The amendment, it seems, was not made. This may be done here, for the sake of uniformity and order.
There is no error, and the judgment must be affirmed.