## STATE v. JOHN EARNHARDT.

### (Filed 17 November, 1915.)

**Convicts—Persons in Charge—Judgment—Clothing—Felony—Interpretation of Statutes.**

In order to convict a superintendent of convicts, or other person in charge, of a violation of section 4, chapter 64, Laws 1911, making it unlawful to work persons convicted of felony in other than a uniform of a felon, or clothe a person convicted of a misdemeanor in the uniform of a felon, it is necessary that the judge imposing the sentence designate in the judgment whether the person was convicted of a felony or misdemeanor, or the kind of clothes the convict should wear; and where the judge has failed to do so, the one in charge of the person convicted is not indictable when the conviction is for manslaughter, though a well known felony, and the prisoner is not clothed in the garb required for one guilty of this offense. The rules for interpretation discussed and applied by WALKER, J.

HOKE, J., did not sit on the hearing of this case. CLARK, C. J., dissenting.

APPEAL by the State from *Carter, J.,* at July Term, 1915, of STANLY.

Criminal action. Defendant, John Earnhardt, was indicted in the Superior Court for having worked Walter J. Kennedy on the chain-gang of the township mentioned in the indictment without requiring him to wear the uniform of a convicted felon, contrary to the statute, and was tried at said term, whereupon the jury returned a special verdict as follows:

"1. At November Term, 1914, of Stanly Superior Court, W. J. Kennedy was duly convicted of manslaughter and sentenced to work for a term of six years on the chain-gang for North and South Albemarle townships.

"2. On or about 13 May, 1915, W. J. Kennedy was turned over to the chain-gang and began working out his sentence, and has worked on the chain-gang continuously since said date.

"3. John Earnhardt, the defendant above named, is the superintendent in charge of the chain-gang and also in charge of W. J. Kennedy, and has been working W. J. Kennedy on the chain-gang ever since the resignation of N. C. Cranford, superintendent.

"4. John Earnhardt, superintendent of said chain-gang, has not required W. J. Kennedy to wear the uniform prescribed to be worn by felons, and that W. J. Kennedy has not worn said uniform, but has been permitted to wear citizen's clothes, although John Earnhardt has been notified of chapter 64, Public Laws 1911.

"5. North and South Albemarle townships' chain-gang was duly created by chapter 33, Public-Local Laws of North Carolina, Session 1913, and that the laws governing the working of convicts on said chain-gang are as prescribed therein and in chapter 71 of Private Laws, Session 1907, creating the Albemarle chain-gang, and the general law of the State.

"6. That a copy of the judgment of the court sentencing W. J. Kennedy is hereto attached and made a part of the facts as found by the jury.

"If upon the foregoing facts the court be of the opinion that the defendant is guilty, the jury so find; otherwise, they find him not guilty.

"Upon the foregoing special verdict of the jury, the court being of opinion that the defendant was not guilty, so adjudged, whereupon the State appealed after having duly excepted."

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*
*Robert L. Smith for defendant.*

WALKER, J., after stating the case: The judgment of the court did not require that W. J. Kennedy, who was convicted of manslaughter and sentenced to six years at hard labor in the penitentiary, should wear the uniform of a felon while at work, which defendant in this action contends was necessary to be stated in the judgment against Kennedy in order to make him criminally liable for not requiring him to do so.

Public Laws 1911, ch. 64, sec. 4, provides, "That it shall be unlawful to work persons convicted of a felony in other than the uniform of a felon, or to clothe a person convicted of a misdemeanor in the uniform of a felon." And section 5 provides that "Any superintendent of convicts, or other person in authority, who shall violate this law shall be guilty of a misdemeanor," and fined or imprisoned, or both, in the discretion of the court, and liable in damages to the party aggrieved. The

first section of the chapter makes it the duty of "the several judicial officers of the State, in assigning any person to work the public roads of a county, to designate in each judgment that such as may be convicted of a felony shall wear felons' stripes, and such as are convicted of a misdemeanor shall not wear stripes." The statute further provides that the State Prison Board shall prescribe uniforms to be worn by persons convicted of felonies and those convicted of misdemeanors, which shall be different and easily distinguishable, with the discretion to allow persons convicted of a misdemeanor to wear plain clothes "similar to those" of an ordinary citizen.

As the judge did not designate in the sentence of W. J. Kennedy in what manner he should be clothed when at work on the chain-gang, it is contended by the defendant, and denied by the State, that the omission of this direction is fatal to the further prosecution of the case. The question, therefore, is whether this provision of the statute is mandatory or merely directory. Our opinion is that it is mandatory, and the decision as to the nature of the offense is confined to the judge, and not left to the defendant's keeper. It is common learning that a statute must be so construed as to give effect to the presumed and reasonably probable intention of the Legislature and so as to effectuate that intention and the object for which it was passed. Where it is clearly worded, so that it is free from ambiguity, the letter of it is not to be disregarded in favor of a mere presumption as to what policy was intended to be declared (*Lewis v. U. S.,* 92 U. S., 618; *Lake County v. Rollins,* 130 U. S., 662; *B. R. Co. v. Sulzberger,* 157 U. S., 1); but where it admits of more than one construction, or is doubtful of meaning, uncertain, or ambiguous, it is not to be construed only by its exact language, but by its apparent general purpose, that meaning being adopted which will best serve to execute the design and purpose of the act, for a thing within the intention is as much within the statute as if it were within the letter. *Wood v. U. S.,* 16 Peters, 342; *Bernier v. Bernier,* 147 U. S., 242; *Smythe v. Fiske,* 23 Wall., 374; *Fortune v. Comrs.,* 140 N. C., 322; *McLeod v. Comrs.,* 148 N. C., 85. There are other principles of statutory construction, which are, that technical rules as to the force or meaning of particular terms must yield to the clear expression of the Legislature's paramount will; and a construction of a statute should not be adopted, if the words will permit, which will lead to evil, unjust, oppressive, or absurd consequences, or those in direct violation of its own provisions. Endlich on Int. of Statutes, 258 and note, 264 and 267; *U. S. v. Freeman,* 3 How., 556; *Hurdekoper v. Douglass,* 3 Cranche, 1; *Hawaii v. Mankiche,* 190 U. S., 197; *U. S. v. Kirby,* 7 Wall., 482; *Oates v. First Natl. Bank,* 100 U. S., 239. The statute, in other words, should be construed sensibly; and in order to make sure of the true intent, the meaning of words or phrases may be extended or narrowed

or additional terms implied, or it may be presumed that the Legislature intended exceptions to its language, where this is necessary to be done in order to enforce the evident purpose; but this is all subject to the general restriction that the meaning is to be ascertained from the words of the statute and the subject-matter to which it relates. *U. S. v. Brewer,* 3 How., 556; *Brewer v. Blougher,* 14 Peters, 178; *U. S. v. Kirby,* 7 Wall., 482; *U. S. v. Goldenberg,* 168 U. S., 95; *Gardner v. Collins,* 2 Peters, 58; Endlich on Int. of Statutes (Ed. 1888), p. 7. Finally, the statute should receive a strict or a liberal construction as the one or the other will execute the real intention as manifested by the words, the paramount duty of the judicial interpreter being to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning, and to promote its object. Endlich, p. 452.

If we are guided by these general rules, we will find that the Legislature evidently intended to have the judge, in his sentence, determine the nature of the crime, whether a felony or a misdemeanor, as it is well known that the persons who have charge of chain-gangs are generally laymen, and consequently not able to draw distinctions between the different crimes with respect to their degrees, whether felonies or not. It was not intended that the officer, unskilled in such matters, should be required to determine, at his peril, the nature of any particular offense charged against the person committed to his custody, nor that any mistake should be made and a wrong thereby done to the convict. What other purpose could the Legislature have had in view when this provision was inserted in the statute? As there could have been none other, it must be considered as an essential part of the judgment, and as one necessary to determine the authority vested in the superintendent of the chain-gang with respect to the kind of clothes to be worn by the convict. Can it be supposed that the Legislature intended to visit such heavy punishment upon the officer having the convict in charge if he should, by any error of judgment as to the law, degrade his prisoner by clothing him with a felon's garb in violation of the statute, and also to subject him to an action for damages where there is no intentional wrong-doing on his part? It would be unreasonable to impute such a purpose to the legislative body, and more in accord with a proper construction of the statute to hold that it was intended as a protection both to the officer and the convict, and as authorizing the former to use the clothes prescribed for a misdemeanant unless it is otherwise adjudged by the court. We cannot say that when the Legislature has positively directed a thing to be done by one person, and a very proper one to do it, by reason of his supposed learning, and superior understanding of such matters, and, too, that it should be done in a given way, it can be done by another person in some other and different way. This would be

opposed to every rule of construction we know of, and might defeat the beneficent purpose of the law.

The defendant further contends that neither the board of county commissioners nor the highway commission, having management and control of the roads in North and South Albemarle townships (Pub. Laws 1913, ch. 33), has provided for the uniforms to be used for the purpose designated in the statute. But we need not decide as to whether this is a legal excuse for the defendant, as our opinion is that the omission of the court to direct, in its judgment against W. J. Kennedy, how he should be clothed is fatal to this prosecution.

The designation of what kind of clothes a convict shall wear is made by chapter 64, sec. 1, Public Laws 1911, as much a part of the judgment as the designation of the kind of punishment the convict shall suffer for the crime he has committed, so far as to prohibit an officer from degrading him with a "felon's stripes" unless so authorized to do by the judgment. This being so, the State has failed to charge, or to show, that the defendant has violated any provision of that statute or of any other law, and the judgment of the court upon the special verdict was therefore correct.

In this view of the law the contention of the State in this Court, so strongly presented by the Attorney-General, that the officer must decide this question for himself and at his peril, especially where the offense of which he has been convicted is a well known felony, as is manslaughter, cannot be sustained, for if we should so hold, the very purpose of the statute would be contravened, if not defeated, as it was intended to afford a double protection—one to the convict, in order that he may be spared the humiliation and degradation of stripes and of being constantly reminded of his infamy, and the other to the officer, that he may not be subjected to indictment or a civil action for damages by his own misapprehension as to the legal character of the offense committed, whether a misdemeanor or a felony, he, perhaps, being, as we have said, only a layman and having no professional knowledge of the law.

For the reasons stated we affirm the judgment.

Affirmed.

HOKE, J., not sitting.

CLARK, C. J., dissenting: Laws 1911, ch. 64, sec. 4, provides that "It shall be unlawful to work persons convicted of felony in other than the uniform of a felon, or to clothe a person convicted of a misdemeanor in the uniform of a felon." Section 5 provides: "Any superintendent of convicts, or other person in authority, who shall violate this law shall be guilty of a misdemeanor." The defendant violated this law by working the person "convicted of a felony in other than the uniform of a felon," and it follows that he was guilty of a misdemeanor. It is true

that another section of the same chapter requires that the "judicial officers of the State, in assigning any person to work the public roads of a county, shall designate in each judgment that such as may be convicted of a felony shall wear a felon's stripes." But this is simply a direction to the judges, for which if they do not obey they are responsible; but it is not made a condition precedent or a guide as to the officers whose duty in regard to clothing a convict is set out in sections 4 and 5.

Whether a convict is a felon or not is a matter of knowledge easily accessible to such officers, who must look to the mittimus for a description of the offense for which each person has been committed to their charge. Whether such offense is a felony or not is a matter of law, and "Every one is presumed to know the law." It is the duty of those in charge of convicts to ascertain the law and obey it. If they fail to do so, they have violated the law and are subject to the prescribed penalty. The special verdict finds that the defendant did not require the convict in this case, who was a felon, to wear the dress prescribed for felons.

Such officers are not excused because the judges have not obeyed another section of the act in wording their judgments. The duty prescribed by sections 4 and 5 for those in charge of convicts is not made dependent in any respect upon the judges observing the requirement that they should add certain matters to their judgments. As already said, that is not made a condition precedent by this statute. Whether a convict is a felon or not does not depend upon the wording of the judgment, but solely on the crime for which each prisoner has been convicted. *S. v. Fesperman,* 108 N. C., 770.

Upon the special verdict the defendant should have been adjudged guilty.