STATE v. JAMES HUMPHRIES.

(Filed 30 June, 1936.)

**1. Statutes B a: Gaming A b—**

Ch. 282, Public Laws of 1935, and ch. 37, Laws of the same year, both dealing with slot machines, must be construed together.

**2. Statutes B a—Courts must supply word omitted when necessary to effect clear purpose of Legislature in enacting the statute.**

A statute will be construed to effect the intent of the Legislature if such intent can be gathered from the act with reasonable clearness and certainty, and where the purpose of an act is clear, and it appears with certainty, either from context or by reference to a statute *in pari materia*, that the interpolation of a certain word, evidently omitted through clerical error, and the deletion of another word are necessary to give the act grammatical form and to express with clearness the legislative intent, it is the duty of the courts to make the necessary corrections in order to effectuate the legislative will.

**3. Gaming A b—Slot machines which depend upon chance in determining the results of their operation held unlawful.**

Coin slot machines which depend in whole or in part upon the element of chance in determining the results of their operation, which results cannot be predicted prior to their operation, are made unlawful by ch. 282, Public Laws of 1935, by a proper construction of the act, and the unlawfulness of such machines is not affected by the fact that the results of their operation may be influenced by skill, or by the fact that such machines may sell merchandise or provide entertainment.

**4. Gaming A b—**

The meaning of sec. 4, ch. 282, Laws of 1935, *is held* not necessary to be determined in a prosecution under sec. 3 of the act.

**5. Same—**

Ch. 37, Public Laws of 1935, is not repealed by ch. 282, Laws of the same year, since the statutes are not in conflict.

**6. Statutes C a—**

Where two statutes deal with the same subject matter, and the later statute repeals all laws in conflict therewith, the later statute will not repeal the former when the statutes are not in conflict, but are supplementary in remedying the same evil.

**7. Statutes B c—**

The rule that criminal statutes must be strictly construed means that they will not be enlarged by implication to embrace cases not within their meaning, but the rule that the legislative intent will be given effect applies to criminal statutes as well as to civil statutes.

**8. Gaming B d—**

In a prosecution under sec. 3, ch. 282, Public Laws of 1935, for possession of an illegal slot machine, evidence as to the licensing of the machine is properly excluded.

STACY, C. J., dissenting.

CONNOR, J., concurs in the dissent.

APPEAL by defendant from *Sinclair, J.,* at December Special Term, 1935, of CUMBERLAND. No error.

Criminal action, tried upon indictment charging the defendant with possession of a slot machine in violation of chapter 282, Public Laws 1935.

The State's evidence tended to show that the defendant was in the possession of a machine or device adapted to be operated by the insertion of a coin in a slot. It was called a marble game or table. By placing a nickel coin in the slot the user or operator was entitled to shoot five balls or marbles, one at a time, by means of a plunger attached to a spring. This causes the balls to roll about over the table under a glass top. If the balls fall in certain designated holes, the player or operator receives "free games," or "if you hit the thing right, it will pay off in money," the amount ranging up to twenty nickels, depending upon the combination of the holes into which the balls drop. "You are unable to predict in advance whether you will receive the same thing each time for a nickel—whether you will receive something or nothing."

The defendant offered to show in cross-examination of a State's witness the following:

"The skill of the player has a lot to do with what he gets. For every nickel deposited in the machine the player gets the same number of balls. He is given five balls and the nickel entitles the player to five shots. The machine is so designed that the player can put a greater amount

of force on one ball than another by the use of the plunger. There is a scale by the side of the plunger that is used by the player, designating the amount of force and tension that can be placed on the ball. I don't know just what the range is. I know there is a scale there."

Upon objection by the State this evidence was excluded, and defendant excepted.

The machine was placed in evidence and operated before the court and jury. The element of chance or unpredictable outcome was demonstrated by such operation.

The defendant offered no evidence.

The court instructed the jury as follows:

"Gentlemen of the jury, the court directs that if you find beyond a reasonable doubt the facts in this case to be as testified by all the witnesses, you will return a verdict of guilty."

The jury returned a verdict of guilty, and from judgment thereon the defendant appealed.

*Attorney-General Seawell and Assistant Attorney-General McMullan for the State.*

*Malcolm McQueen and Downing & Downing for defendant.*

DEVIN, J. The bill of indictment sets out *verbatim* sec. 3 of ch. 282, Acts 1935, which defines an unlawful slot machine as follows:

"That any machine, apparatus, or device is a slot machine or device prohibited by the provisions of this act if it is one that is adapted for use in such a way that, as a result of the insertion of any piece of money or coin or other object, such machine or device is caused to operate or may be operated, and by reason of any element of chance over which the operator cannot have any control over the outcome of the operation of such machine or device each and every time the same is operated, or to the operator the outcome of each separate operation of such machine or device is unpredictable in advance of each and every operation of such machine or device, may receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or any check, slug, token, or memorandum, whether of value, except as herein permitted, which may be exchanged for any money, credit, or thing of value or allowance, or which may be given in trade or the user may secure additional chances or rights to use such machine, apparatus, or device, irrespective of whether it may, apart from any element of chance over which the user may not have any control over the outcome of the operation or where the definite outcome of each separate operation of such machine or device is not predictable to the user in advance, or the outcome of such operation is not dependent in whole or in part upon

skill and practice of the operator, also sell, deliver, or present some merchandise, indication, or weight, entertainment, or other thing of value."

The above quoted section, consisting of a single involved sentence, is somewhat confused, and presents some difficulty in interpretation. But, under the maxim, *"Ut res magis valeat quam pereat,"* it becomes the duty of the court, by proper construction, to determine and declare its meaning if that may be ascertained with reasonable clearness and certainty. The purpose of the statute is manifest. The General Assembly, under its police power, undertook to prohibit the possession and operation of certain slot machines which it declared were public nuisances. To the statutes already in force against lotteries and gambling devices the General Assembly of 1931 added chapter 14 of the Public Laws of that session defining and prohibiting the keeping of slot machines, and by Act of 1935, chapter 282, under which this defendant was indicted, the provisions of existing law against such devices were sought to be made comprehensive enough to include the possession of any kind of coin operated machine where by reason of any element of chance the outcome of its operation was unpredictable in advance.

The General Assembly of 1935 had previously enacted chapter 37, making the possession of a slot machine unlawful, and defined such machine as follows:

Sec. 3. "That any machine, apparatus, or device is a slot machine or device within the provisions of this act if it is one that is adapted, or may readily be converted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object, such machine or device is caused to operate or may be operated, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or any check, slug, token, or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance, or thing of value, or which may be given in trade, or the user may secure additional chances or rights to use such machine, apparatus, or device; irrespective of whether it may, apart from any element of chance or unpredictable outcome of such operation, also sell, deliver, or present some merchandise, indication or weight, entertainment, or other thing of value."

The similarity of the provisions of the last quoted sec. 3 to those of sec. 3 of chapter 282 is apparent. Corresponding sections of the later act merely added certain clauses parenthetically to the former. These two acts being *in pari materia* must be construed together. The former gives us light in the interpretation of the later. *Castevens v. Stanly Co.,* 209 N. C., 75. Sec. 3 of ch. 282, under which defendant was

indicted, standing alone, is ungrammatical. It cannot be parsed. The predicate "may receive" in line 12 has no subject. But by reference to line 8, in sec. 3 of ch. 37, we see that the word "user" is the subject of the verb "may receive," and that in the later act this word was by error of the draftsman or the printer inadvertently omitted. It is the duty of the court to supply such an omission and to interpolate words manifestly omitted by clerical error. With the word "user" or "operator" inserted, the section has grammatical form and intelligible meaning to carry out the legislative intent.

The object of all interpretation is to determine the intent of the lawmaking body. Intent is the spirit which gives life to a legislative enactment. The heart of a statute is the intention of the law-making body. *Trust Co. v. Hood, Comr.,* 206 N. C., 268; *S. v. Earnhardt,* 170 N. C., 725. In the language of Chancellor Kent: "In the exposition of a statute the intention of the lawmaker will prevail over the literal sense of the terms, and its reason and intention will prevail over the strict letter. When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt and the remedy in view, and the intention is to be taken or presumed according to what is consonant with reason and good discretion." I Kent Com., 461.

Clerical errors, which, if uncorrected, would render the statute unmeaning or nonsensical, or would defeat its intended operation, will not vitiate the act. They will be corrected by the court and the statute read as amended, provided the true reading is obvious and the real meaning of the Legislature is apparent on the face of the whole enactment. Black Int. Laws, p. 157.

Words may be interpolated when the meaning is plain and unmistakable. The language used in a statute must, if possible, be so construed as to give it some force and effect; and, consequently, when the language is elliptical the words which are obviously necessary to complete the sense will be supplied. Black Int. Laws, p. 167; *Loper v. State,* 82 Minn., 71.

"In order to carry out the will of the Legislature expressed in an imperfect way, the courts will interpolate punctuation or words evidently intended to be used when the omission is plainly indicated and the statute as written is incongruous or unintelligible." 2 Lewis' Sutherland Stat. Cons., p. 737; *Holmberg v. Jones,* 7 Idaho, 752; *Hutchins v. Bank,* 91 Va., 68 (word "not" supplied).

If the grammatical sense of the words is inconsistent with the purpose of the statute, or would involve an absurdity, the grammatical sense must be modified or extended to avoid such inconvenience. "Words may

be modified, altered, or supplied to give the effect intended by the Legislature." Black Int. Laws (2d), p. 148.

It is the duty of the court to construe an ambiguous statute to determine the legislative intent, and in doing so may eliminate words and clauses having no grammatical place in the sentence. *Ikerd v. R. R.,* 209 N. C., 270.

But the defendant rests his appeal on the proposition that section 3 of chapter 282, under which he was indicted, excludes from its prohibition a machine where the result of its operation is dependent in whole or in part upon the skill of the operator. In the instant case he offered to show that the skill and practice of the operator had something to do with the result, though the operation was still subject to the element of chance, with the outcome unpredictable. This requires an examination of the last clause of sec. 3, ch. 282, beginning with the word "irrespective." In chapter 37 this word is preceded by a semicolon instead of a comma, as in chapter 282. To adopt the punctuation in the former act makes it clearer that the word "irrespective" governs and controls the remaining clauses of this section, and sustains the interpretation that the section defines a slot machine as unlawful when it is one adapted to use in such a way that by the insertion of a coin the outcome of its operation, by reason of any element of chance, is unpredictable, without regard to the fact that it may also, apart from question of skill, afford entertainment or sell merchandise. The use of the word "also" supports this construction. This interpretation is consistent with the remaining portions of this section, with chapter 37, and with the manifest purpose and intent of the General Assembly.

Analyzing and paraphrasing these last lines of section 3, and omitting useless verbiage, the meaning of the language used emerges, and it may reasonably be construed to convey the legislative purpose and intent to be that the language previous to the word "irrespective" defines what constitutes an unlawful slot machine, and that this definition must abide, irrespective of whether the machine may also, leaving out of consideration any element of chance or uncertainty of outcome or the question whether the outcome is not dependent on skill, sell merchandise or present entertainment. That is, if the machine is rendered unlawful by reason of the fact that the element of chance is present, and that from its operation the result is unpredictable, its unlawfulness is not to be affected by the further fact that the machine may also sell merchandise, or present entertainment, disconnected from such element of chance or where the outcome is not dependent on skill.

The first section of chapter 37 makes unlawful the possession of "any slot machine as thereinafter defined." Sec. 1 of chapter 282 contains the identical language save for the addition of one word. It declares

unlawful "any slot machine or device except as hereinafter defined." The addition of the word "except" in the last line of sec. 1 of the act, standing alone, would give us some concern, since it apparently would make every sort of slot machine unlawful except that defined in sec. 3, and the court is not at liberty to interpret a statute so as to make an act criminal unless the act is embraced within the language of the statute when properly construed.

. But the language of sec. 3 of ch. 282, slightly differing from that of sec. 3 of ch. 37, undertakes to define what sort of slot machine or device is "prohibited by the provisions of this act," thus showing the legislative intent to make the possession of the described machine unlawful. Construing these sections together, we conclude, from the later inclusion of such machine in the prohibition, that the word "except" was not intended to exclude from unlawfulness the machine defined. This construction is consistent with the apparent purpose of the statute. To hold otherwise would result in an absurdity and tend to defeat an act passed for the salutary purpose of remedying a recognized evil.

"The ascertainment of the legislative intent is the cardinal rule, or rather the end and object, of all construction; and where the real design of the Legislature in ordaining a statute, although it be not precisely expressed, is yet plainly perceivable, or ascertained with reasonable certainty, the language of the statute must be given such construction as will carry that design into effect, even though, in so doing, the exact letter of the law be sacrificed, or though the construction be, indeed, contrary to the letter. And this rule holds good even in the construction of criminal statutes." Endlich Int. Stat., p. 400.

"Where words in a statute are susceptible of two constructions, one of which will lead to an absurdity, the other not, the latter is to be adopted. And where one portion or provision of a statute, if literally construed, would practically nullify the whole or some material portion of the remainder, it is a settled rule of construction, flowing from the obvious absurdity of any other, that such an interpretation shall, if possible, be placed upon the statute, *ut res magis valeat quam pereat."* Endlich Int. Stat., p. 351.

"Where the language of a statute, in its grammatical construction, leads to manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, presumably not intended, a construction may be put upon it which modifies the meaning of the words, and even the structure of the sentence. This is done sometimes by giving an unusual meaning to particular words, or by rejecting them altogether, or by interpolating other words, under the view that the modifications thus made are mere corrections of careless language, and really give the true legislative intention." Endlich Int. Stat., p. 399.

The meaning of sec. 4 of ch. 282 might present another difficulty, but its interpretation is not necessary for the determination of a prosecution under sec. 3.

Sec. 9 of ch. 282 provides that "laws in conflict with this act are repealed." This section cannot be held to repeal ch. 37, because the two acts are not in conflict. Both evince the same purpose to remedy the same evil. The later act adds certain words and clauses to section 3 of the prior act, and then adds additional sections making unlawful the operation of a machine prohibited by the act, and its display with intent to operate. The later act also exempts certain counties from its provisions, and makes no reference to the section in the former act preventing the levy and collection of license taxes on the unlawful machine.

The rule is that if two statutes cover the same matter in whole or in part, and are not absolutely irreconcilable, it is the duty of the court to give effect to both (Black Int. Laws, p. 325), and the later act does not repeal the earlier. *S. v. Broadway,* 157 N. C., 598; *Castevens v. Stanly Co., supra.*

So that these two acts take their places with the other statutes and enactments of the General Assembly, emphasizing the settled policy of this State to outlaw the devices described in the bill of indictment under which this defendant was convicted.

We hold that the defendant might well have been indicted under either act, or by a bill charging in more concise language the possession of an unlawful slot machine in violation of the statutes in such cases made and provided.

While it has been said of old that penal statutes must be construed strictly, it was well said in *Freight Discrimination Cases,* 95 N. C., 434, that this ruling means no more than that the court will not, through interpretation, extend by implication the purpose of the statute so as to embrace cases not within its meaning. "This rule is, however, never to be applied so strictly and unreasonably as to defeat the clear intention of the Legislature. On the contrary, that intention must govern, in construing penal as well as other statutes. This is a primary rule of construction, applicable in the interpretation of all statutes."

In the interpretation of penal statutes it is generally recognized that the paramount duty of the judicial interpreter is to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning, and to promote its object. Endlich, p. 452.

The exception to the exclusion of evidence as to licensing the slot machine cannot be sustained. *S. v. May,* 188 N. C., 470.

For the reasons stated, we conclude that the rulings of the court below were correct, both in excluding the proffered testimony and in his instructions to the jury. In the trial we find

No error.

STACY, C. J., dissenting: On 20 February, 1935, the General Assembly enacted a statute, ch. 37, Public Laws 1935, prohibiting the manufacture, sale, possession, and use of certain slot machines, gambling apparatus and devices, as therein defined, which by later amendment, ch. 85, was to become effective 1 May, 1935, "it being the purpose of this amendment to permit the present owner and/or operators of the said machines until May first, one thousand nine hundred thirty-five, to dispose of the said machines."

As originally adopted, the possession of defendant's slot machine, for use or lease, was undoubtedly made unlawful by the terms of this act. The statute prohibited the possession for use of any and all such slot machines.

However, on 3 May, 1935, the above act was rewritten and reënacted in substantially different form, ch. 282, Public Laws 1935, and all laws and clauses of laws in conflict therewith were repealed. The purpose of this latter statute, as expressed in its title, is "to regulate the operation of certain coin operated games, devices, and apparatus," etc. In the rewritten act, the prohibition or condemnation of the statute is limited to any slot machine, apparatus, or device, the operation of which is dependent upon some element of chance, or unpredictable outcome, and "not dependent in whole or in part upon skill and practice of the operator." *S. v. Gupton,* 30 N. C., 271.

In addition to the change in title, which may be called in aid of construction, the first section of the rewritten act provides that it shall be unlawful to manufacture, sell, rent, lease, or operate any slot machine or device "except as hereinafter defined." Section 3 then defines the slot machines "prohibited by the provisions of this act . . . *except as herein permitted."* Following this exception is the language "or the outcome of such operation is not dependent in whole or in part upon skill and practice of the operator."

It is further provided in section 4 of the rewritten act that "No person who has charge of the supervision of such coin operated devices shall permit any person under the age of eighteen (18) years to engage in the operation of such device unless such person be accompanied by a parent or other person *in loco parentis* who, being present, sanctions such play."

This section 4 is new and is not to be found in ch. 37 at all. Indeed, it could have no place in a prohibitory statute, while it is quite in keeping with a permissive or regulatory one.

It seems clear that what the General Assembly intended to do was to recede from its position of absolute prohibition declared in ch. 37, and to permit the operation of some "such coin operated devices" under supervision and regulation. Yet, the Court says if any element of

chance be present, or the outcome is unpredictable to the operator, the question of skill is not material. If this be the correct interpretation, then nothing was accomplished by the enactment of ch. 282, for the same thing had already been done in ch. 37, the only difference being that in the first act the purpose is clearly expressed, whereas in the second, if prohibition were also its purpose, a more inappropriate choice of language to express the legislative intent could hardly have been selected. *S. v. Burnett,* 173 N. C., 750, 91 S. E., 597. It is not to be supposed the lawmakers intended to execute a circular performance or to engage in a futile gesture. *Garrison v. R. R.,* 150 N. C., 575, 64 S. E., 578.

Moreover, there is reason in the method pursued by the General Assembly in changing the statute from one of prohibition to one of regulation. It is not unlawful to engage in games of skill, or those wholly dependent upon "skill and practice of the operator." They are neither immoral nor inherently wrong. Hence, it may have been regarded as an arbitrary discrimination to say that coin operated devices could not be kept and used for such purpose. *S. v. Williams,* 146 N. C., 618, 61 S. E., 61; *Nance v. R. R.,* 149 N. C., 366. For example, it may be doubted whether the General Assembly could validly prohibit the possession for use of coin operated scales, music boxes, vending machines, etc., so long as the purposes accomplished by them are lawful. In other words, given a lawful end, to wit, a game of skill, it may be doubted whether the possession of innocent means for the accomplishment of that end alone, could be made unlawful under our constitutional system. *S. v. Brockwell,* 209 N. C., 209. At any rate, this is what the General Assembly was trying to avoid, and investments have been retained on the strength of the effort thus made to relax the rigors of the prohibitory statutes on the subject. Conversely, if the General Assembly meant nothing by the enactment of ch. 282, as indicated by the present holding, then a false hope has been held out to those who have moneys invested in these properties. This was not intended by the General Assmbly, as witness ch. 85 of the same session.

However much our predilections may incline us to the prohibitive view, there is no justification for invading the legislative field. *Wake County v. Faison,* 204 N. C., 55, 167 S. E., 391; *Person v. Doughton,* 186 N. C., 723, 120 S. E., 481; *Moore v. Jones,* 76 N. C., 187. "It is ours to construe the laws and not to make them"—*Hoke, J.,* in *S. v. Barksdale,* 181 N. C., 621, 107 S. E., 505. "It is in the province of the lawmaking power to change or modify the statute, not ours"—*Clarkson, J.,* in *Dill-Cramer-Truitt Corp. v. Downs,* 201 N. C., 478, 160 S. E., 492. The intention of the lawmaking body is not to be defeated by interpretation. *Freight Discrimination Cases,* 95 N. C., 434.

STATE v. HUMPHRIES.

To interpret ch. 282 as a prohibitory statute, rather than a regulatory one, is to disregard its title, to overlook the expression "except as herein permitted," and to strike out section 4 altogether. This strips the act of its pronounced features, sacrifices the spirit for the letter, and leaves the law as it was before its passage. Another case in which "the letter killeth, but the spirit giveth life." 2 Cor., 3 :6.

There is no debate over the proposition that the heart of a statute is the intention of the lawmaking body (*Trust Co. v. Hood, Comr.,* 206 N. C., 268, 173 S. E., 601), and that when not clearly expressed, this is to be ascertained by judicial interpretation. *Abernethy v. Comrs.,* 169 N. C., 631, 86 S. E., 577; *Fortune v. Comrs.,* 140 N. C., 322, 52 S. E., 950. Words obviously omitted may be interpolated to make the sense complete, but they are never to be added or deleted·so as to defeat or thwart the legislative will. *Freight Discrimination Cases, supra.* "It is fully established that where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded"—*Hoke, J.,* in *S. v. Barksdale, supra.*

Speaking to the subject in *S. v. Earnhardt,* 170 N. C., 725, 86 S. E., 960, *Walker, J.,* delivering the opinion of the Court, animadverted as follows:

"It is common learning that a statute must be so construed as to give effect to the presumed and reasonably probable intention of the Legislature, and so as to effectuate that intention and the object for which it was passed. Where it is clearly worded, so that it is free from ambiguity, the letter of it is not to be disregarded in favor of a mere presumption as to what policy was intended to be declared (*Lewis v. U. S.,* 92 U. S., 618; *Lake County v. Rollins,* 130 U. S., 662; *B. R. Co. v. Sulzberger,* 157 U. S., 1); but where it admits of more than one construction, or is doubtful of meaning, uncertain, or ambiguous, it is not to be construed only by its exact language, but by its apparent general purpose, that meaning being adopted which will best serve to execute the design and purpose of the act, for a thing within the intention is as much within the statute as if it were within the letter," citing as authority for the position: *Wood v. U. S.,* 16 Peters, 342; *Bernier v. Bernier,* 147 U. S., 242; *Smythe v. Fiske,* 23 Wall., 374; *Fortune v. Comrs.,* 140 N. C., 322; *McLeod v. Comrs.,* 148 N. C., 85.

Under a proper interpretation of the statute, the evidence elicited on cross-examination from the State's witness was admissible and the directed verdict erroneous. *S. v. Ellis, ante,* 166.

CONNOR, J., concurs in dissent.